**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>**7 AT BLUE LAGOON (1), LLC,**<br><br>Debtor.<br>______________________________/ | Case No. 25-21286-RAM<br>Chapter 11<br><br>(Jointly Administered) |
| In re:<br><br>**7 AT BLUE LAGOON (2), LLC,**<br><br>Debtor.<br>______________________________/ | Case No. 25-21287-RAM<br>Chapter 11 |

**DEBTORS' EMERGENCY MOTION FOR STAY PENDING APPEAL OF (I) PARAGRAPH 6 OF THE JULY 29, 2026 ORDER [ECF NO. 278] AND THE TRUSTEE-UPON-DEFAULT PROVISIONS OF ECF NOS. 278, 283, AND 310, (II) PARAGRAPH 20 OF THE SALE ORDER [ECF NO. 310], AND (III) THE CONFIRMATION ORDER [ECF NO. 308] TO THE EXTENT IT REMOVES THE REFINANCING OPTION, AND REQUEST FOR DETERMINATION WITHOUT HEARING**

(Fed. R. Bankr. P. 8007(a); 11 U.S.C. § 105(a))

**EMERGENCY RELIEF REQUESTED:** The Debtors request a ruling on this motion, on the papers and without a hearing, on or before **September 4, 2026**. The Court advised counsel by e-mail on August 27, 2026 that it does not intend to conduct further hearings before the September 10, 2026 closing date; the Debtors therefore do not request a hearing, but do request a prompt ruling so that, if the motion is denied, the Debtors may seek relief from the District Court under Rule 8007(b) before the Closing Deadline. The Closing Deadline under the Sale Order entered August 27, 2026 [ECF No. 310] is September 10, 2026, and the Court has waived the Rule 6004(h) stay. If the successful bidder fails to close, the July 29, 2026 Order [ECF No. 278] provides for the appointment of a Chapter 11 trustee, and paragraph 20 of the Sale Order provides for a hearing, on a Notice of Default and without further notice, to approve a sale of the Property to the back-up credit bidder — extinguishing the estates' approximately $25,000,000 in equity before the District Court can rule on the Debtors' pending appeal. Absent relief by that date, the appeal will be rendered moot and the harm irreversible. The Debtors do not seek to stay the closing with Mr. Ramos.

7 At Blue Lagoon (1), LLC and 7 At Blue Lagoon (2), LLC, debtors and debtors-in-possession (the "Debtors"), by undersigned counsel, pursuant to Fed. R. Bankr. P. 8007(a) and 11 U.S.C. § 105(a), move for a stay pending appeal of (i) paragraphs 4 and 6 of the Court's *Order (I) Denying the Sale Motion With a Stalking Horse Bidder Without Prejudice, (II) Denying the Refinancing Motion With Prejudice, (III) Establishing a Deadline for Filing an Agreed Sale Motion, and (IV) Providing for Appointment of a Chapter 11 Trustee Upon Default* [ECF No. 278] (the "Refinancing Denial Order"), to the extent paragraph 6 denies the Refinancing Motion with prejudice and paragraph 4 provides for the appointment of a Chapter 11 trustee upon default, together with paragraph 8 of the Agreed Order on Bid and Sale Procedures [ECF No. 283] (the "Bid Procedures Order") to the extent it carries that mechanism forward; (ii) paragraphs 20 and 21 of the *Order Approving Sale of Debtors' Property Free and Clear of Liens, Claims, Interests, and Encumbrances* [ECF No. 310] (the "Sale Order"), to the extent they provide for approval of a sale of the Property to the back-up bidder, RIC (Blue Lagoon) LLC ("RBL"), on its credit bid, and for the appointment of a Chapter 11 trustee, and any order entered under paragraph 20 approving such a sale; and (iii) the Order Confirming Chapter 11 Plan [ECF No. 308] (the "Confirmation Order"), to the extent it modifies the Plan to remove the refinancing option; in each case pending the Debtors' appeal filed August 27, 2026 [ECF No. 312], as amended, and the Debtors' forthcoming appeal from the Sale Order and the Confirmation Order (together, the "Appeal") from the Refinancing Denial Order, the *Order (1) Denying Motion to Approve Private Sale, (2) Denying Motion to Reconsider, and (3) Conditionally Allowing the Buyer to Participate in Auction* [ECF No. 297] (the "Reconsideration Denial Order"), the Sale Order, and the Confirmation Order (together, the "Orders"). In support, the Debtors state:

## PRELIMINARY STATEMENT

This motion asks the Court to preserve the status quo for the short period needed for the District Court to decide whether the Debtors may refinance their secured debt rather than surrender their property. The Debtors own real property in Miami that a court-supervised auction has just valued at $50,000,000. Every allowed claim against the estates — secured, priority, and unsecured — totals approximately $25,000,000. The estates are solvent by roughly $25,000,000. The Refinancing Denial Order nonetheless denied, with prejudice, the Debtors' motion to borrow the funds needed to pay RBL in full, and it directs that if the sale does not close a Chapter 11 trustee shall be appointed. The Sale Order entered August 27, 2026 provides that, on the same default, the Court will proceed on a Notice of Default, without further notice, to consider a sale of the Property to RBL on its credit bid of approximately $23,425,000 — less than half its auction value — and the Confirmation Order removes from the Plan the refinancing option that would have paid RBL in full and preserved the Property for the estates. The Sale Order also holds, over the Debtors' objection, that if Mr. Ramos defaults the estates' sole and exclusive remedy is the $1,000,000 deposit. Sale Order ¶ 4.

The successful bidder, Jorge Ramos, has now indicated, through counsel, that he may be unable to fund the $49,000,000 balance of the purchase price he swore he controlled. If he defaults on September 10, 2026, the combined effect of the Orders is that the estates recover $1,000,000 from the defaulting purchaser, RBL takes a $50,000,000 property for a $23,425,000 debt, unsecured creditors go unpaid, equity is extinguished, and a trustee replaces management — all within days, and all before the District Court can address whether the Court erred in foreclosing the Debtors' refinancing alternative. Once the deed is delivered, 11 U.S.C. § 363(m) and paragraph 19 of the Sale Order will make the transfer irreversible and the Appeal moot.

A stay costs RBL nothing. RBL is oversecured by more than two-to-one; its claim accrues interest, fees, and costs under 11 U.S.C. § 506(b) for every day the stay is in place; and it will be paid in full, in cash, on any outcome except the one it prefers — taking the Property itself. The equities are not close.

## JURISDICTION AND PROCEDURAL POSTURE

1. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. Fed. R. Bankr. P. 8007(a)(1) requires that a motion for stay pending appeal be presented first to the bankruptcy court. This motion is so presented. If it is denied, the Debtors will seek relief in the District Court under Rule 8007(b).

2. The Refinancing Denial Order was entered July 29, 2026. The Debtors timely moved for reconsideration [ECF No. 292]. The Reconsideration Denial Order was entered August 13, 2026. The Confirmation Order was entered August 25, 2026, and the Sale Order was entered August 27, 2026. The Debtors filed their Notice of Appeal on August 27, 2026 [ECF No. 312], within fourteen days of the Reconsideration Denial Order, and will timely seek reconsideration of, and appeal from, the Confirmation Order and the Sale Order within the time provided by Fed. R. Bankr. P. 9023 and 8002. Rule 8007(a)(1) permits this motion to be presented before the notice of appeal from those orders is filed. Fed. R. Bankr. P. 8002(a)(1), (b).

3. An auction was conducted on August 17, 2026 under the Bidding Procedures Order [ECF No. 283]. Jorge Ramos was declared the successful bidder at $50,000,000 (the "Successful Bid"). RBL's credit bid of not less than $23,425,000 is the back-up bid. [ECF No. 304]. The Sale Order approves the sale to Mr. Ramos for $50,000,000 in cash, sets a Closing Deadline of September 10, 2026, makes time of the essence, waives the Rule 6004(h) stay, and provides in

paragraph 20 that, upon a Notice of Default, the Court will hear RBL's back-up bid "without further notice." Sale Order ¶¶ 1, 4, 20, 22.

4. By signed declaration dated August 14, 2026, submitted to Joel Aresty as the proof of funds along with unredacted bank statements, and in support of the Debtors' sale motion, Mr. Ramos attested that he controls $58,000,000 in funds. See end of Exhibit A, and [ECF No. 289; see also ECF No. 299.] On August 26, 2026, Mr. Ramos's counsel advised the Debtors' representative that Mr. Ramos had asked him to "review" the executed purchase agreement and disputed the buyer's remedies and the joint venture terms. The Debtors have demanded written confirmation and proof of funds by August 28, 2026. [Exhibit A.] The Debtors bring this motion now because, if Mr. Ramos defaults, the consequences under the Orders and the Sale Order are immediate and irreversible.

## RELIEF REQUESTED

5. The Debtors request an order staying, pending final disposition of the Appeal: (a) paragraph 6 of the Refinancing Denial Order, and paragraph 4 of the Refinancing Denial Order and paragraph 8 of the Bid Procedures Order to the extent they provide for the appointment of a Chapter 11 trustee upon any default in the sale process; (b) paragraphs 20 and 21 of the Sale Order, to the extent they provide for approval of a sale of the Property to RBL as back-up bidder on its credit bid and for the appointment of a Chapter 11 trustee, and any order entered under paragraph 20 approving such a sale; and (c) the Confirmation Order, to the extent it modifies the Plan to remove the refinancing option. The Debtors **do not** seek to stay the Successful Bid or the closing with Mr. Ramos or any permitted assignee; the Debtors want that closing to occur and this motion has no effect on it.

6. In the alternative, the Debtors request a stay of the same provisions for ninety (90) days, or such other period as the Court deems appropriate, to permit the Debtors to present a plan of reorganization funded by committed exit financing sufficient to pay all allowed claims in full, and to permit the District Court to rule on the Debtors' forthcoming motion for stay under Rule 8007(b).

7. The Debtors further request that the Court waive the requirement of a supersedeas bond, or set the bond in a nominal amount, for the reasons stated in Part IV below.

## ARGUMENT

8. A stay pending appeal under Rule 8007 is governed by the four traditional factors: (1) whether the movant is likely to prevail on the merits of the appeal; (2) whether the movant will suffer irreparable injury absent a stay; (3) whether the stay would substantially harm the other parties; and (4) whether the public interest favors a stay. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The factors are balanced, not applied mechanically: where "the balance of the equities weighs heavily in favor of granting the stay," the movant need only show "a substantial case on the merits." *Garcia-Mir*, 781 F.2d at 1453 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A 1981)). Each factor favors the Debtors here.

### I. The Debtors Present, at Minimum, a Substantial Case on the Merits.

9. The Appeal presents a question of law reviewed de novo: whether a bankruptcy court may deny, with prejudice, a solvent debtor's motion to obtain post-petition financing sufficient to pay its oversecured lender in full, and thereby channel the debtor's only asset to that lender on a credit bid at less than half of its court-established value. The Debtors respectfully

submit that it may not, for at least the following reasons, each of which will be developed in the Debtors' brief on appeal:

10. *First*, 11 U.S.C. § 364 authorizes a debtor-in-possession to obtain credit, and the standard for approval is the debtor's sound business judgment. Nothing in § 364 or the Rules permits a court to foreclose a category of relief "with prejudice" for the remainder of the case; On April 20, 2026, this Court denied the Debtors' first financing motion *without* prejudice "to the Debtor filing a motion seeking approval of a refinancing that has no remaining contingencies and will pay all allowed claims in full." [ECF No. 234 ¶ 2.] The Debtors did exactly that: on July 15, 2026 they filed the Refinancing Motion supported by a $35,000,000 loan commitment from Benworth Capital Partners PR, LLC reflecting an accepted appraisal of the Property at $71,400,000 [ECF Nos. 250, 254], and RBL itself computed its secured claim at $23,282,635.44 as of July 31, 2026 [ECF No. 262 at 6 n.1]. The stated grounds for the with-prejudice denial were that the Debtors had "failed to engage in the sale process consistent with" the January 22, 2026 agreed order [ECF No. 175] and that the April 15, 2026 refinancing deadline in that order had expired without RBL's consent to extend it. [ECF No. 278 at 2.] Those are grounds of timing and process under a consensual order; they say nothing about the merits of a contingency-free refinancing that pays every allowed claim in full at closing, which is the motion ECF No. 234 invited. Converting a procedural deadline in an agreed order into a permanent, case-long bar on a full-payment exit, with no finding that such a refinancing could never serve the estates, is a manifest error of law and a sanction that injures only the estates and their equity holders while conferring nothing on creditors.

11. *Second*, the auction itself established that the Property is worth at least $50,000,000 and that the estates are solvent by approximately $25,000,000. On that record, an order that directs

the Property to the secured creditor on a $23,425,000 credit bid if the cash sale fails does not maximize value for the estate; it transfers roughly $26,000,000 of value from unsecured creditors and equity to RBL. The fiduciary duty of a debtor-in-possession, and the purpose of § 363, run the other way.

12. *Third*, paragraph 4 of the Refinancing Denial Order, paragraph 8 of the Bid Procedures Order, and paragraph 21 of the Sale Order each provide for the appointment of a Chapter 11 trustee upon a default or non-compliance, on the ex parte submission of an order, without the motion, notice, evidentiary hearing, and findings that 11 U.S.C. §§ 102(1) and 1104(a) require. A default by a third-party purchaser is not "fraud, dishonesty, incompetence, or gross mismanagement" by the debtor, § 1104(a)(1), and the Court has made no finding that displacing management would serve the interests of creditors or equity, § 1104(a)(2). The January 22, 2026 agreed order that these same parties negotiated required a filed certification of default, a five-business-day cure period, and an expedited hearing before any relief. [ECF No. 175 ¶ 12.] Nothing in the record justifies abandoning that process now.

13. Whether or not the District Court ultimately agrees, these are serious legal questions on which reasonable jurists could differ. That is sufficient under the sliding scale the Eleventh Circuit applies when, as here, the remaining factors weigh overwhelmingly in the movant's favor.

## II. Absent a Stay, the Debtors Will Suffer Irreparable Harm and the Appeal Will Be Moot.

14. Real property is unique, and its loss is the paradigm of irreparable injury. If Mr. Ramos defaults on September 10, 2026, the Sale Order limits the estates' recovery from him to the $1,000,000 deposit (¶ 4), directs the Court to proceed on a Notice of Default without further notice to consider a sale to RBL on its credit bid (¶ 20), and, with the Refinancing Denial Order, provides

for a trustee. The deed will be delivered within days of that hearing. Once it is, 11 U.S.C. § 363(m) and paragraph 19 of the Sale Order will bar any reversal or modification on appeal from affecting the validity of the sale, and the Appeal will be dismissed as moot. The Debtors will have lost a $50,000,000 asset, unsecured creditors will have lost their recovery, and equity will have lost approximately $25,000,000, with no possibility of restoration.

15. The appointment of a trustee compounds the harm. A trustee has no obligation to prosecute the Appeal, no incentive to pursue a refinancing the Court has denied with prejudice, and every incentive to close with RBL and administer the residue. The Debtors' appellate rights would, as a practical matter, be extinguished by the very order under appeal.

16. Monetary damages cannot remedy any of this. The Debtors cannot sue RBL for taking the Property under a court order, cannot recover the estates' lost equity from anyone, and cannot reacquire the Property once title has passed to a good-faith purchaser.

## III. A Stay Will Not Substantially Harm RBL or Any Other Party.

17. RBL's allowed secured claim is fixed at not less than $23,425,000 [ECF No. 283, ¶ 2(c)] against a Property the auction valued at $50,000,000. RBL is oversecured by more than $26,000,000. Under 11 U.S.C. § 506(b), interest, reasonable fees, and costs accrue on its claim throughout any stay, and every dollar is protected by the equity cushion. RBL will be paid in full in cash on closing of the Successful Bid, on closing of any substituted purchaser, or on confirmation of a plan funded by exit financing. The only outcome a stay prevents is RBL acquiring the Property for its debt — a windfall, not a harm the law protects.

18. No other creditor is prejudiced. The stay does not delay the Ramos closing. Unsecured creditors, the City of Miami, and administrative claimants are paid in full from a

$50,000,000 sale or a plan; they receive little or nothing from a credit-bid conveyance to RBL. The Office of the United States Trustee's interest in the integrity of the process is served, not impaired, by preserving the status quo pending appellate review.

**IV. The Public Interest Favors a Stay, and No Bond Should Be Required.**

19. The public interest favors the orderly resolution of appeals on their merits, the maximization of value for all creditors rather than one, and the preservation of a solvent debtor's ability to pay its debts in full. It does not favor the transfer of a $50,000,000 property to a secured lender for less than half its value while an appeal is pending.

20. Rule 8007(c) permits the Court to condition a stay on a bond "or other security," but does not require one. The purpose of a bond is to protect the appellee against loss from delay. RBL faces none: it is oversecured by more than two-to-one, its claim accrues interest and fees under § 506(b), and the Property is insured and maintained. The equity cushion is itself the security. The Debtors therefore request that the bond be waived or set in a nominal amount. In the alternative, the Debtors will consent, as a condition of the stay, to (a) continued maintenance of insurance on the Property, (b) monthly reporting to RBL and the United States Trustee, and (c) such other non-monetary conditions as the Court deems appropriate.

**REQUEST FOR DETERMINATION WITHOUT HEARING**

21. The Court advised counsel by e-mail on August 27, 2026 that it does not intend to conduct further hearings in this case before the September 10, 2026 closing date. The Debtors accordingly request that the Court rule on this motion on the papers, without a hearing, on or before September 4, 2026, so that the Debtors may, if necessary, present a motion under Rule 8007(b) to the District Court before the Closing Deadline. The need for prompt relief arises from the

September 10, 2026 Closing Deadline and the automatic consequences that follow a default under the Orders and the Sale Order, described above. The Debtors did not create the emergency: Mr. Ramos's counsel first questioned the buyer's obligations on August 26, 2026, one day before the appeal deadline, and the Debtors filed this motion the same day they filed the Notice of Appeal. The Debtors have conferred, or will confer before the hearing, with counsel for RBL, the buyer, and the United States Trustee regarding the relief requested.

## CONCLUSION

The Debtors respectfully request that the Court enter an order (i) staying, pending final disposition of the Appeal, paragraph 6 of the Refinancing Denial Order, paragraph 4 of the Refinancing Denial Order and paragraph 8 of the Bid Procedures Order to the extent they provide for appointment of a Chapter 11 trustee upon default, paragraphs 20 and 21 of the Sale Order to the extent they provide for a sale to RBL on its credit bid and for appointment of a trustee, any order entered under paragraph 20 of the Sale Order, and the Confirmation Order to the extent it removes the refinancing option from the Plan; (ii) alternatively, granting such stay for ninety (90) days; (iii) waiving the requirement of a bond or setting it in a nominal amount; (iv) ruling on this motion without a hearing on or before September 4, 2026; and (v) granting such other and further relief as is just.

Dated: August 28, 2026
Respectfully submitted,

**JOEL M. ARESTY, P.A.**
Board Certified Business Bankruptcy Law
Counsel for the Debtors and Debtors-in-Possession
309 1st Ave S
Tierra Verde, FL 33715
Phone: (305) 904-1903
Fax: 1-800-559-1870
Aresty@Mac.com

By: /s/ Joel M. Aresty
Joel M. Aresty, Esq.
Fla. Bar No. 197483

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 28, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel and parties registered to receive electronic service in these cases, including Peter H. Levitt, Esq. and Vincent F. Alexander, Esq., Shutts & Bowen LLP, counsel for RIC (Blue Lagoon) LLC; Juan C. Zorrilla, Esq., Fowler White Burnett, P.A., counsel for Jorge Ramos; Patricia M. Arias, Esq., Office of the City Attorney, City of Miami; Sundeep K. Mullick, Esq., The Barthet Firm, counsel for Kobi Karp Architecture & Interior Design, Inc.; Brett M. Amron, Esq., Bast Amron LLP, counsel for Michael J. Schlesinger; and Steven D. Schneiderman, Esq., Office of the United States Trustee; and was served by e-mail on the same counsel.

By: /s/ Joel M. Aresty
Joel M. Aresty, Esq.

.]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re 7 At Blue Lagoon (1), LLC and 7 At Blue Lagoon (2), LLC — Case No. 25-21286-RAM (Jointly Administered)

# INDEX OF EXHIBITS

to Debtors' Emergency Motion for Stay Pending Appeal (Fed. R. Bankr. P. 8007)

| | |
|---|---|
| **Exhibit A** | E-mail from Juan C. Zorrilla, Esq. (counsel for purchaser Jorge Ramos) to Adeena Weiss-Ortiz dated August 26, 2026 (6:40 PM); together with the Debtors' Notice of Default, Demand for Performance, and Notice of Intent to Sue to Jorge Ramos c/o Juan C. Zorrilla, Esq., dated August 26, 2026; and August 14, 2026b Declaration of Jorge Ramos Regarding Control and Availability of Funds |
| **Exhibit B** | Order Approving Sale of Debtors' Property Free and Clear of Liens, Claims, Interests, and Encumbrances [ECF No. 310], entered August 27, 2026 |
| **Exhibit C** | E-mail from the Honorable Robert A. Mark, U.S.B.J., to all counsel dated August 27, 2026 ("I do not intend to conduct any further hearings in this case prior to the September 10th closing date.") |

# EXHIBIT A

E-mail from Juan C. Zorrilla, Esq. dated August 26, 2026 (6:40 PM), and Debtors' Notice of Default, Demand for Performance, and Notice of Intent to Sue dated August 26, 2026

In re 7 At Blue Lagoon (1), LLC and 7 At Blue Lagoon (2), LLC

Case No. 25-21286-RAM (Bankr. S.D. Fla.)

Debtors' Emergency Motion for Stay Pending Appeal (Fed. R. Bankr. P. 8007)

**TRUE AND CORRECT COPY OF E-MAIL**

---

**From:** Juan C. Zorrilla <JZorrilla@fowler-white.com>
**Sent:** Wednesday, August 26, 2026, 6:40 PM
**To:** Adeena Weiss-Ortiz
**Subject:** Purchase and Sale Agreement — 7 At Blue Lagoon

Dear Adeena:

Mr. Ramos requested that I review the subject Purchase and Sale Agreement that was previously executed. In recent emails, I noted your redlined revisions/additions to the proposed Order that was circulated after the August 19, 2026 hearing. One of your additions to the proposed Order is the remedy of specific performance remedy in the event of a "Buyer's Default". That remedy is not in the PSA and should not be judicially engrafted onto it.

I understand that Judge Mark is going to prepare the Order in light of counsels' inability to reach a consensus. I request that you inform Judge Mark that you are withdrawing your inclusion of the non-agreed to remedy and avoid a motion for reconsideration if Judge Mark relies upon the implicit representation of counsel that the remedy is in the PSA.

I also noted that you are appending the Joint Venture Agreement to the PSA even though it was tied to the "private sale" that was denied. I do not know what transpired between the date the private sale was denied and the August 19, 2026 hearing to revive the Joint Venture Agreement. I understand that the hearing transcript was ordered. Perhaps the explanation is there. Last Sunday during our Zoom call, I expressed my views on the Joint Venture Agreement.

Thanks,

Juan

Juan C. Zorrilla
Shareholder, Fowler White Burnett, P.A.
Citigroup Center, 201 South Biscayne Boulevard, 20th Floor, Miami, FL 33131
Direct 305.789.9262 | Main 305.789.9200 | JZorrilla@fowler-white.com

**WEISS ORTIZ, P.C.**
1011 East 31st Street, La Grange Park, Illinois 60526
Tel. (773) 498-4498 | info@weissortizlaw.com

August ___, 2026

**VIA E-MAIL (JZorrilla@fowler-white.com) AND OVERNIGHT COURIER**

Jorge Ramos
c/o Juan Zorrilla, Esq.
Fowler White Burnett, P.A.
1395 Brickell Avenue, 14th Floor
Miami, Florida 33131

**Re: NOTICE OF DEFAULT, DEMAND FOR PERFORMANCE, AND NOTICE OF INTENT TO SUE**
Purchase and Sale Agreement dated July 8, 2026, and Joint Venture — 7 At Blue Lagoon, Miami, Florida
*In re 7 At Blue Lagoon (1), LLC and 7 At Blue Lagoon (2), LLC*, Case No. 25-21286-RAM (Bankr. S.D. Fla.)

Dear Mr. Zorrilla:

This firm writes on behalf of 7 At Blue Lagoon (1), LLC and 7 At Blue Lagoon (2), LLC, debtors and debtors-in-possession (the "Debtors"), and as the Debtors' authorized representative, regarding your client Jorge Ramos. Please direct all further communications concerning this matter to the undersigned, with a copy to Debtors' bankruptcy counsel, Joel M. Aresty, P.A.

We understand that Mr. Ramos has advised that he does not have, and cannot deliver, the $50,000,000.00 cash purchase price he agreed to pay and represented to the United States Bankruptcy Court that he had. If that is true, then either the sworn declaration Mr. Ramos filed with the Court attesting that he controls $58,000,000.00 was false when made, or he has the funds and is simply refusing to perform. Either way, Mr. Ramos is in anticipatory breach of a court-approved agreement, and the Debtors will hold him fully accountable. **Govern yourselves accordingly.**

**The Record**

The facts are not in dispute, because Mr. Ramos created them:

**1.** On July 8, 2026, Mr. Ramos executed the Purchase and Sale Agreement (the "PSA") agreeing to purchase the Property for $50,000,000.00 in cash, together with the joint venture agreement contemplated thereby (the "JV"). The PSA contains no financing contingency, and the Court's bidding procedures order (DE 283) required that no Qualified Bid be subject to one.

**2.** Mr. Ramos tendered deposits totaling $1,000,000.00 to Joel M. Aresty, P.A., and on August 14, 2026 caused a Notice of Unconditional Deposit to be filed with the Bankruptcy Court, representing to the Court and to every creditor that his deposit was unconditional and non-refundable.

**3.** **Mr. Ramos executed and filed with the Bankruptcy Court a signed declaration stating that he is in control of $58,000,000.00 in funds** — a sum exceeding the entire purchase price by $8,000,000.00 — for the express purpose of establishing his ability to close. That declaration was submitted to a United States Bankruptcy Judge, relied upon by the Court, the Debtors, and every creditor, and is a matter of public record.

**4.** Mr. Ramos personally appeared at the August 17, 2026 auction, participated in it, and was declared the successful bidder at $50,000,000.00. The transcript of that auction is on file (DE 304). Seyed M. Moghani likewise affirmed on the record that he was Mr. Ramos' partner with authority to bind him and represented that Mr. Ramos was ready, willing, and able to close.

**5.** In reliance on those representations, the Debtors filed and prosecuted the Emergency Motion to Approve the sale (DE 289); the Court conducted the auction; and the Court approved the sale by order entered at DE ____ (the "Sale Order"), which fixes a Closing Deadline of September 10, 2026 and waives the Rule 6004(h) stay so that the sale may close immediately.

**6.** Every creditor in this case — the secured lender, the City of Miami, the professionals, the disputed claimants — and the Debtors' equity holders, have ordered their affairs around Mr. Ramos' sworn commitment to deliver $49,000,000.00 in cash on or before September 10, 2026.

**Demand**

The Debtors hereby demand that Mr. Ramos, no later than **5:00 p.m. Eastern on ____________, 2026**:

**(a).** Confirm in writing, signed by Mr. Ramos, that he will close the purchase of the Property on or before September 10, 2026 in strict accordance with the PSA, the JV, and the Sale Order;

**(b).** Deliver written evidence, satisfactory to the Debtors, of the $58,000,000.00 in funds Mr. Ramos declared under oath that he controls, and in any event of immediately available funds sufficient to pay the full $49,000,000.00 balance of the purchase price at closing — bank statements, an executed and unconditional loan commitment, or an escrow confirmation from a recognized financial institution, and not a term sheet or letter of interest; and

**(c).** Confirm that neither Mr. Ramos nor anyone acting on his behalf has represented to any lender, investor, broker, or third party that the purchase price, the deposit, or the closing terms are other than as set forth in the PSA and the Sale Order.

Nothing short of full compliance will be accepted. The Debtors will not entertain a renegotiation of the price, a deferral of any portion of the purchase price, seller financing, or an extension of the Closing Deadline. The deal is the deal that was bid, approved, and ordered.

**Consequences of Non-Performance**

If Mr. Ramos fails to comply with this demand or fails to close on or before September 10, 2026, the Debtors will, without further notice, pursue every remedy available to them, including the following:

1. **Specific performance.** Real property is unique. The Debtors will move in the Bankruptcy Court, which retained jurisdiction under the Sale Order, to compel Mr. Ramos to close at $50,000,000.00 on the terms he agreed to and the Court approved, and will seek an order directing him to deposit the balance of the purchase price into the registry of the Court.

2. **Forfeiture of the $1,000,000.00 deposit.** The deposit is non-refundable by the terms of the PSA, the bidding procedures order, the Sale Order, and Mr. Ramos' own Notice of Unconditional Deposit. It will be retained by the estate and applied against the Debtors' damages, not in satisfaction of them.

3. **Compensatory and consequential damages for breach of the PSA and the JV.** These include, without limitation, the difference between $50,000,000.00 and the price ultimately realized from the back-up bidder or any subsequent sale; all carrying costs, interest, taxes, insurance, and code-enforcement exposure accruing from September 10, 2026 until closing; all additional professional fees and administrative expenses of the estate caused by the delay; the lost benefit of the JV; and interest at the maximum lawful rate.

4. **Attorneys' fees and costs** under the PSA, the JV, and applicable law, at all trial and appellate levels.

5. **Fraud on the court and sanctions.** A representation to a federal court that a bidder has $50,000,000.00 in cash, made to obtain an order approving a sale, when the bidder does not have the money, is a fraud on the court. A signed declaration filed with the Court attesting to control of $58,000,000.00 that the declarant did not control is a false statement under penalty of perjury, 28 U.S.C. § 1746, made to procure a sale order. The Debtors will ask the Bankruptcy Court to exercise its authority under 11 U.S.C. § 105(a), Fed. R. Bankr. P. 9011, and its inherent power, *see Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), to sanction Mr. Ramos and every person who made or authorized those representations, to hold them in civil contempt of the Sale Order, and to award the estate its fees and damages. The Debtors will further seek a finding that Mr. Ramos is not a good-faith purchaser under 11 U.S.C. § 363(m) and will bring the matter to the attention of the Office of the United States Trustee.

6. **Fraudulent inducement and negligent misrepresentation.** The Debtors, their creditors, and their equity holders relied on Mr. Ramos' and Mr. Moghani's representations of financial capacity in forgoing other bidders, consenting to the sale, and structuring the plan. Those claims will be asserted against Mr. Ramos, Mr. Moghani, and any entity through which they acted.

7. **Claims against third parties.** Any person who has assisted Mr. Ramos in misrepresenting his ability to close, or who interferes with the Debtors' performance of the Sale Order, will be joined for tortious interference, aiding and abetting, and civil conspiracy.

8. **Sale to the back-up bidder.** The Debtors will simultaneously proceed to close with the back-up bidder under the Sale Order and will charge Mr. Ramos with every dollar of the shortfall.

**<u>Preservation of Evidence</u>**

Mr. Ramos, Mr. Moghani, Quantum Advisors LLC, and any affiliated entity are directed to preserve all documents and electronically stored information relating to the PSA, the JV, the

deposit, the $58,000,000.00 declaration and the accounts and assets referenced therein, the auction, their financial capacity to close, and all communications with lenders, investors, brokers, and any other person concerning the purchase of the Property, from January 1, 2026 to the present. Destruction or alteration of any such material will be brought to the Court's attention and will support an adverse-inference instruction and further sanctions.

**<u>Reservation of Rights</u>**

This letter is not a complete statement of the facts or of the Debtors' rights, claims, and remedies, all of which are expressly reserved. Nothing herein is a waiver, election of remedies, extension of time, or modification of the PSA, the JV, or the Sale Order, and no course of dealing or continued discussion shall be construed as such. Time is of the essence.

Mr. Ramos made a $50,000,000.00 promise to a federal court and to every creditor in this case. He will keep it, or he will answer for it.

Very truly yours,

**WEISS ORTIZ, P.C.**

/s/ Adeena Weiss-Ortiz
Adeena Weiss-Ortiz
Authorized Representative of the Debtors
7 At Blue Lagoon (1), LLC and 7 At Blue Lagoon (2), LLC

cc: Joel M. Aresty, Esq., Joel M. Aresty, P.A., Counsel for the Debtors (aresty@mac.com)
Seyed M. Moghani
Quantum Advisors LLC
Citlali Mascorro, Esq., Weiss Ortiz, P.C.

**DECLARATION OF JORGE RAMOS REGARDING CONTROL AND AVAILABILITY OF FUNDS**

I, JORGE RAMOS ("Ramos"), hereby declare, represent, and confirm as follows:

1. I am the prospective purchaser of approximately 6.99 acres of land located at 4865 NW 7th Street, Miami, Florida, which is the subject of the auction and sale proceedings involving 7 at Blue Lagoon 1 LLC and 7 at Blue Lagoon 2 LLC.

2. I am submitting this Declaration for the purpose of confirming my control of, authority over, and ability to direct funds sufficient to fund my proposed $50,000,000.00 purchase of the Property.

3. I have control of and authority over approximately $57,000,000.00 in funds that are available to fund the purchase of the Property.

4. Those funds consist of approximately:

   a. $9,000,000.00 held at Bank of America; and

   b. $48,000,000.00 held at Charles Schwab.

5. The foregoing funds are held in accounts in the names of Massoud Hajjarli, Maral Kargar Moakhar, and 3BG MMM, LLC.

6. Notwithstanding that the funds are held in the foregoing names, I have control of and authority over the approximately $57,000,000.00 in funds and have the authority to direct and cause such funds to be transferred and utilized to fund the purchase of the Property.

7. The funds are sufficient to satisfy the proposed $50,000,000.00 purchase price for the Property.

8. In the event that I am approved by the Court as the successful purchaser of the Property, I have the present ability and authority to cause the funds necessary to consummate the purchase to be transferred and made available for closing, in accordance with the Court's sale order and applicable sale procedures.

9. I make these representations for the purpose of confirming my financial ability to consummate the proposed purchase and my control and authority over the funds identified herein.

I declare that the foregoing statements concerning my control and authority over the funds identified herein and the availability of those funds for the contemplated purchase are true and correct.

Dated: August 14, 2026

JORGE RAMOS

JORGE RAMOS

Date: August 14, 2026

# EXHIBIT B

Order Approving Sale of Debtors' Property Free and Clear of Liens, Claims, Interests, and Encumbrances [ECF No. 310], entered August 27, 2026

In re 7 At Blue Lagoon (1), LLC and 7 At Blue Lagoon (2), LLC

Case No. 25-21286-RAM (Bankr. S.D. Fla.)

Debtors' Emergency Motion for Stay Pending Appeal (Fed. R. Bankr. P. 8007)

**ORDERED in the Southern District of Florida on August 27, 2026.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

7 AT BLUE LAGOON (1), LLC
7 AT BLUE LAGOON (2), LLC

Debtors.
_______________________________/

Case 25-21286-RAM
Jointly administered with
Case 25-21287-RAM

Chapter 11

**ORDER APPROVING SALE OF DEBTORS' PROPERTY FREE AND CLEAR OF <u>LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES</u>**

**THIS MATTER** came before the Court for hearing on August 19, 2026, at 3:30 p.m. (the "Sale Hearing") upon the Debtors' Agreed Motion to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. § 363(f) (DE #281) (the "Sale Motion"); the Agreed Order on Bid and Sale Procedures for Auction Sale of Debtors' Property and Setting Sale Hearing (DE #283) (the "Sale Procedures Order"); the Order (1) Denying Motion to Approve Private Sale, (2) Denying Motion to Reconsider, and (3) Conditionally Allowing the Buyer to Participate in Auction (DE #297) (the

"August 13, 2026 Order"); the Debtors' Notice Confirming Receipt of Funds and of Unconditional Deposit (DE #299); the Debtors' Notice of Filing Notice of Auction Results (DE #300) (the "Notice of Auction Results"); Michael J. Schlesinger, P.A.'s Limited Objection to Back-Up Bid of RBL (DE #301); and RBL's Response to Limited Objection and to Report of Auction (DE #302). The property being sold (the "Property") is described in paragraph 2(a) of the Sale Procedures Order. "RBL" means RIC (Blue Lagoon) LLC. The "PSA" means the Purchase and Sale and Joint Venture Agreement between the Debtors and Jorge Ramos and his successors and/or assigns ("Ramos") filed at DE #289 (pp.10-40) and the "Joint Venture Agreement" means the joint venture provisions of and exhibit to the PSA.

The Court has considered the foregoing, the record, and the representations of counsel and the parties at the Sale Hearing. The Court has also considered the disputes on the appropriate form of this Order reflected in emails to the Court copied to all major parties in interest.

RBL submitted a proposed order on August 24th agreed to by RBL and other parties with liens against the Debtors' property, including Michael Schlessinger and Mr. Schlessinger's law firm, Kobi Karp Architecture & Interior Design, Inc., and the City of Miami, which confirmed its agreement in an August 25th email to the Court. The form of the Order submitted by RBL (the "RBL Order") was also agreed to by Jason Welt, the real estate broker retained by the Debtors and by the Office of the United States Trustee, except for a proposed change to paragraph 20 of the Order.

The major substantive objections to the form of the RBL Order were described in an email on August 25th and a redlined proposed order attached to the email, submitted by Adeena Weiss, as the corporate representative of the Debtors and on behalf of her mother, Caroline Weiss, one of the Debtors' equity holders (the "Weiss Objection"). Counsel for the Debtors, Joel Aresty, has

offered no comments on either the RBL Order or the Weiss Objection. RBL responded to the Weiss Objection in an August 26th email (the "RBL Response"). Having reviewed the RBL Order, the Weiss Objection, and the RBL Response and being otherwise fully advised, and for the reasons stated on the record of the Sale Hearing which are incorporated herein by reference as supplemented and amended in part by this Order, the Court finds and determines as follows:

**A. Findings and Conclusions.** The findings of fact and conclusions of law set forth herein and stated on the record at the Sale Hearing, as amended in part by this Order, constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent any finding of fact constitutes a conclusion of law, it is adopted as such, and to the extent any conclusion of law constitutes a finding of fact, it is so adopted.

**B. Jurisdiction, Authority, and Venue.** The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O), and the Court has authority to enter a final order in this matter. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief granted are 11 U.S.C. §§ 105(a), 363(b), 363(f), 363(m), and 363(n), and Federal Rules of Bankruptcy Procedure 2002, 6004, and 9014.

**C. Notice.** Due, adequate, and sufficient notice of the Sale Motion, the auction, the Sale Hearing, and the relief granted by this Order has been provided in accordance with 11 U.S.C. §§ 102(1) and 363, Federal Rules of Bankruptcy Procedure 2002 and 6004, and the Sale Procedures Order. All parties in interest were afforded a reasonable opportunity to object and to be heard. No other or further notice is required.

**D. Compliance with Sale Procedures.** The auction was conducted on August 17,

2026, in accordance with the Sale Procedures Order, as modified by the August 13, 2026 Order (which rescheduled the auction from August 14, 2026, to August 17, 2026). The Debtors and Ramos have complied with the Sale Procedures Order and the August 13, 2026 Order in all material respects.

**E. Fair and Open Auction; No Collusion.** The auction was conducted fairly, in good faith, and at arm's length, and its integrity was maintained. The Property was exposed to a competitive, court-approved bidding process open to all Qualified Bidders. The bids were not the product of fraud or collusion, and no bidder engaged in any conduct prohibited by 11 U.S.C. § 363(n). Each Qualified Bidder acknowledged that it had not engaged and would not engage in collusion, as required by the Sale Procedures Order.

**F. Deposits.** Ramos timely deposited $600,000 in cleared funds into the Joel M. Aresty, P.A. Attorney Trust Account (the "Debtors' Counsel's Trust Account") in compliance with the August 13, 2026 Order, and timely deposited an additional $400,000 in cleared funds for a total deposit of $1,000,000 before or following the auction as required by paragraph 2(l) of the Sale Procedures Order. Ramos has satisfied all deposit requirements. The deposits, totaling $1,000,000, are non-refundable in the event the closing does not occur. The non-refundable nature of the $1,000,000 was acknowledged by Ramos (or his agents) at the Sale Hearing.

**G. Successful Bid.** As reported in the Notice of Auction Results, the highest and best bid at the auction was that of Ramos, in the amount of $50,000,000 in cash. Ramos's bid is the highest and best offer for the Property.

**H. Business Justification.** The sale of the Property is supported by sound business justification and a valid business purpose. The Debtors have exercised reasonable business judgment in determining to sell the Property to Ramos pursuant to the Purchase and Sale

Agreement (the "PSA")[1] and Joint Venture Agreement (DE #289, pp.10-26), and the sale is in the best interests of the Debtors, their estates, and their creditors.

**I. Marketing and Process.** The Property was actively marketed for several months, and the sale process was fair, reasonable, and adequate. On December 23, 2025, the Court entered its Order Granting Debtors' Application for Authorization to Employ Real Estate Broker (DE #83), authorizing the Debtors to employ Trustee Realty Inc. and Jason A. Welt (collectively, the "Broker") as exclusive real estate broker for the sale of the Property pursuant to the Vacant Land Listing Agreement attached to the Debtor in Possession's Application for Employment of Real Estate Broker (DE #70), as modified by DE #83 (the "Listing Agreement"). The Court subsequently entered, on the motion of RBL (DE #237), its Order Granting Motion Confirm Continuation of Broker Listing Agreement Filed by Creditor RIC (Blue Lagoon) LLC (DE #244), confirming the extension and the continued retention of the Broker on the same terms and conditions previously approved through the closing of the auction sale. Among other things, the Broker marketed the Property, negotiated and conveyed offers to the Debtors, kept the Court and interested parties regularly apprised of updates in the sale process, qualified potential bidders for the auction sale, and conducted the auction held on August 17, 2026, and rendered substantial services that facilitated the sale transaction approved herein.

**J. Good-Faith Purchaser.** Ramos is a good-faith purchaser within the meaning of 11 U.S.C. § 363(m). Ramos's bid was made in good faith, for value, and without fraud, collusion, or knowledge of any adverse claim. No party objected at the Sale Hearing to a finding that the auction was conducted in good faith or that Ramos bid in good faith. Ramos is not an insider or affiliate of the Debtors, and the Joint Venture Agreement between Ramos and the Debtors was fully

[1] The Court's reference to the PSA in this Order references only the sale agreement portion of the Joint Venture and Sale Agreement, not the Joint Venture Agreement.

disclosed on the record and does not detract from Ramos's good faith. Ramos is entitled to all of the protections of 11 U.S.C. § 363(m), and the reversal or modification of this Order or any prior order concerning the sale on appeal shall not affect the validity of the sale to Ramos pursuant to the PSA, as modified by this Order, unless this Order and the sale are stayed pending appeal.

**K.** **No Successor Liability.** Ramos is neither a successor to nor a continuation of either or both of the Debtors. Ramos is unrelated to the Debtors, except that the PSA and the Joint Venture Agreement provide that Ramos and the Debtors are 50%/50% joint venture partners.

**L.** **Authority to Close.** The Debtors have full authority and are directed to execute and deliver all documents required to be delivered to the purchaser under the Sale Procedures Order and the PSA (the "Sale Documents") and to consummate the sale. Caroline Weiss has authorized the sale and has authority to execute the Sale Documents on behalf of the Debtors, and the sale has been duly and validly authorized by all necessary corporate action.

**M.** **Unconditional Obligation to Close.** The Court has reviewed the PSA and finds that there are no requirements, conditions, or contingencies to the obligation of the purchaser to close on the sale, and no obligations of the Debtors, as a condition to the purchaser's obligation to close, other than the entry of this Order. At the Sale Hearing, Mr. Seyed M. Moghani, who represented to the Court that he is Ramos' partner and authorized to act for and bind Ramos, affirmed on the record that the only condition to closing is the entry of this Order.[2]

**N.** **Assignment.** The PSA and the Joint Venture Agreement provide that Ramos and the Debtors are 50%/50% joint venture partners, and the PSA further provides that the parties may form a joint venture entity to be the purchaser of the Property. The PSA is assignable by Ramos

[2] The Court rejects the additional language in this paragraph requested in the Weiss Objection. Moreover, all other proposed revised language in the Weiss Objection, not adopted in part in this Order, or specifically referred to in this Order, have been reviewed, considered, and rejected by the Court as not appropriate or, in some instances, redundant and unnecessary.

and may be assigned to a joint venture entity formed by the Debtors and Ramos prior to closing for the purpose of acquiring the Property. Any such assignment shall not relieve Ramos of his obligations under the PSA and this Order, shall not delay the closing, and shall not affect the payments required to be made at closing under this Order, including the payment to RBL.

**O. PSA Disputes Do Not Affect Closing.** The Court approves the PSA. The closing of the sale is not conditioned on the performance of any obligation under the PSA other than entry of this Order. The Court does not retain jurisdiction to resolve disputes arising under the Joint Venture Agreement or joint venture provisions of the PSA, and no such dispute shall provide grounds to prevent or delay the closing.

**P. Free and Clear Under § 363(f).** The requirements of 11 U.S.C. § 363(f) are satisfied. The sale price exceeds the aggregate value of all asserted liens on the Property within the meaning of 11 U.S.C. § 363(f)(3), and one or more of the additional conditions of § 363(f) is satisfied as to each asserted lien, claim, interest, or encumbrance. Accordingly, the Property may be sold free and clear of all liens, claims, interests, and encumbrances, with such liens, claims, interests, and encumbrances to attach to the proceeds of the sale.

**Q. Brokers.** The PSA provides for the payment of a real estate commission of 0.75% of the purchase price ($375,000) to the Broker and 0.75% ($375,000) to a cooperating broker. At the hearing on the Sale Motion, Ramos identified Netali Bar of Investreal as the cooperating broker (the "Buyer's Broker"), and she advised the Court that she introduced Ramos to the Debtors' principal, Caroline Weiss. Payment of these commissions at closing is customary and required by the PSA. The Court has determined the entitlement of the Brokers to compensation for purposes of paragraph 9 of the Sale Procedures Order.

**R. RBL Secured Claim.** RBL holds a first-priority secured claim against the Property

(the "RBL Secured Claim"). Paragraph 2(c) of the Sale Procedures Order, an agreed order, fixes the amount of the RBL Secured Claim as of the date of the auction at not less than $23,425,000.00, subject to adjustment through the date of the closing. Under paragraph 2(d) of the Sale Procedures Order, the RBL Secured Claim shall be paid in full at the closing if RBL is not the successful bidder. As set forth in paragraph 6 of the Court's Order of January 22, 2026 (DE #175), another agreed order, and pursuant to paragraph 2(o) of the Sale Procedures Order, the RBL Secured Claim, to be paid at closing, includes post-judgment interest from the date of entry of RBL's foreclosure judgment plus RBL's post-judgment attorney's fees and costs and is fully secured. The RBL Secured Claim is the sum of the following amounts: (a) $23,425,000.00, plus (b) interest at the Florida judgment rate on RBL's judgment from the original date of the auction sale[3] (August 14, 2026), as set in the Sale Procedures Order, through the date of the closing, plus (c) the attorney's fees and costs of RBL that were not included in the $23,425,000.00 amount except, to the extent disputed, will be held in escrow at closing in Debtors' Counsel's Trust Account, as provided in paragraph 8 below. Pursuant to paragraph 2(o) of the Sale Procedures Order, RBL is required to provide a payoff statement to the successful bidder. The Court overrules the Debtors' argument in the Weiss Objection that this Order should preserve the Debtors' right to object to all of RBL's attorney's fees. In the [Agreed] Sale Procedures Order (DE #283), the Debtors acknowledged and agreed that RBL's secured claim as of the August 14 scheduled auction was $23,425,000 and that amount included attorney's fees incurred through that date. The Debtors did not preserve, and cannot now assert, a right to object to the fees included in the agreed upon RBL Secured Claim of $23,425,000. The only fees subject to objection are the Additional Fees, as more specifically described in paragraph 8 below.

[3] In the August 13, 2026 Order, the Court, with the consent of all parties, postponed the auction to August 17, 2026.

**S.** **Interim Compensation.** The fees and expenses awarded in the Court's Amended Order Granting Interim Fee Application of Joel M. Aresty, P.A. (DE #309) (the "Interim Award"), will be paid at closing. The Court overrules the objection of the Debtors' equity holder to the amount and payment at closing of the Interim Award.

**T.** **Taxes and City Claims.** Ad valorem real property taxes are prorated and otherwise treated as provided in paragraph 9 below, and the amounts asserted by the City of Miami on account of fines, penalties, and code-enforcement obligations are treated as provided in paragraph 10 below. This Order does not adjudicate the amount, validity, or priority of any such tax or City claim.

**U.** **Deferred Objections.** No holder of any lien, claim, interest, or encumbrance on the Property, and no other creditor, has objected to the sale, except for the limited objection of Michael J. Schlesinger, P.A. and Michael J. Schlesinger individually ("Schlesinger"), joined by Kobi Karp Architecture & Interior Design, Inc. ("Kobi Karp"), directed solely to RBL's back-up bid. By agreement of RBL, Schlesinger, and Kobi Karp, the Court defers consideration of those objections and will hear and determine them only if the sale to Ramos fails to close as provided herein.

**V.** **Rule 6004(h).** Cause exists to waive the fourteen-day stay under Federal Rule of Bankruptcy Procedure 6004(h) so that the sale may close on or before the Closing Deadline of September 10, 2026. No party has objected to the sale (as distinguished from the deferred back-up-bid objections), and the estates and creditors will benefit from a prompt closing.

**W.** **Transfer Taxes.** The sale is being made under and pursuant to the Debtors' Joint Plan of Reorganization (as amended) (the "Plan"). The Court has entered, or will enter prior to or contemporaneously with this Order, an order confirming the Plan under 11 U.S.C. § 1129, as

modified to remove the refinancing option. Because the sale and the transfer of the Property to the purchaser are made under a plan confirmed under 11 U.S.C. § 1129, the transfer is exempt from documentary stamp taxes, surtaxes, and similar stamp, transfer, recording, and mortgage taxes pursuant to 11 U.S.C. § 1146(a).

**X. The Property.** The Property that is the subject of this Order is the Debtors' real property located at 4865 NW 7 Street, Miami, Florida 33126, comprising three (3) contiguous land lots bearing Tax Folio Nos. 01-3131-010-0050, 01-3131-010-0051, and 01-3131-010-0052 and approximately 6.99 acres, together with all improvements, fixtures, easements, appurtenances, and development rights. As set forth in paragraph 2 of the Sale Procedures Order, the Property has the legal description set forth in Exhibit B to the Agreed Motion, which legal description is attached to and incorporated in this Order as **Exhibit A**.

Accordingly, for the foregoing reasons, and being otherwise fully advised, it is **ORDERED** and **ADJUDGED** that:

1. **Sale Approved.** The sale of the Property to Ramos for $50,000,000 in cash is approved. Ramos was the highest and best bidder at the auction conducted on August 17, 2026.

2. **Authorization to Sell and Consummate.** Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and directed to sell the Property to Ramos and to consummate the sale in accordance with the PSA, the Sale Procedures Order, and this Order. The Debtors and their professionals are authorized and directed to execute, deliver, and record the Sale Documents and to take all actions reasonably necessary to consummate the sale, without further order of the Court.

3. **Deposits; Balance of Purchase Price.** The two deposits made by Ramos, totaling $1,000,000 and held in the Debtors' Counsel's Trust Account, are non-refundable in the event Ramos does not timely close. The deposits shall be credited against the purchase price, and Ramos

shall pay the balance of $49,000,000 in cleared funds at closing.

**4. Closing Deadline.** The closing shall occur on or before September 10, 2026 (the "Closing Deadline"). Time is of the essence. The Closing Deadline shall not be extended except as expressly authorized by subsequent order of this Court. Failure to close by the Closing Deadline shall result in forfeiture of Ramos's deposits as liquidated damages. The Court rejects the proposed additional language in the Weiss Objection providing for additional remedies. Paragraph 15.1 of the PSA states that forfeiture of the deposit as liquidated damages under paragraph 4.2 is the Debtors' "sole and exclusive remedy at law or in equity." (DE #289, p.21).

**5. Unconditional Sale.** The obligation of the purchaser, Ramos, to consummate the sale pursuant to the PSA, as modified by this Order, is unconditional except for entry of this Order, subject only to the ministerial closing mechanics expressly required by the Sale Documents. All material conditions to the purchaser's obligation to close have been satisfied, waived, or eliminated other than entry of this Order. The sale is not subject to any contingency, including any financing, due-diligence, title-insurance, title-commitment, material-adverse-change, further-Court approval, or any plan-confirmation condition.

**6. Free and Clear; Vesting of Title.** Pursuant to 11 U.S.C. § 363(f), upon closing the Property shall be transferred to and shall vest in the purchaser free and clear of all liens, claims, interests, and encumbrances of any kind, to the maximum extent permitted by law and the Sale Documents. All such liens, claims, interests, and encumbrances not satisfied at closing shall attach to the sale proceeds with the same validity, priority, extent, and enforceability they had against the Property immediately before the closing, subject to all rights, claims, objections, defenses, and challenges that existed before the sale. Governmental and recording authorities are authorized and directed to accept for recording and to record the deeds and other instruments necessary to

effectuate the transfer of the Property to the purchaser. Notwithstanding the foregoing, ad valorem real property tax liens and the City of Miami fines, penalties, and code-enforcement claims shall be treated as provided in paragraphs 9 and 10 of this Order, respectively.

**7. No Successor Liability.** The sale to Ramos is also free and clear of any claims of derivative, vicarious, or successor liability of any kind, nature, or character whatsoever, by reason of any theory of law or equity.

**8. Payment to RBL at Closing.** (a) At the closing and in no event later than the Closing Deadline, the purchaser or closing agent shall pay RBL by wire transfer the full amount of the RBL Secured Claim, consisting of (i) $23,425,000.00, plus (ii) interest at the Florida statutory judgment rate on RBL's judgment from the original date of the auction sale (August 14, 2026) through the date of the closing, plus (iii) the attorney's fees and costs of RBL that were not included in the amount of $23,425,000.00 (the "Additional Fees"), all as set forth in a payoff statement to be furnished by RBL prior to closing (the "RBL Payoff Amount"); (b) the RBL Payoff Amount is subject only to the possible holdback of the Additional Fees or some portion thereof in the event the Debtors dispute the reasonableness of the amount of the Additional Fees, (c) in the event the Debtors dispute the amount of the Additional Fees, the existence of that dispute shall not delay the payment at closing of the balance of the RBL Payoff Amount (the total RBL Payoff Amount less the disputed amount of the Additional Fees); (d) in the event of any dispute concerning the Additional Fees, the Additional Fees or the portion of the Additional Fees that is disputed, shall not be disbursed to RBL at closing but shall instead be deposited directly into the Debtors' Counsel's Trust Account pending further order of the Court; (e) consistent with paragraph 2(d) of the Sale Procedures Order, nothing in this Order shall impair, subordinate, avoid, or otherwise adversely affect the validity, priority, extent, or enforceability of RBL's first-priority lien or the

RBL Secured Claim; (f) RBL shall deliver original releases/satisfactions of its judgment, mortgage and other security instruments upon its receipt of cleared funds for the full RBL Payoff Amount, less any portion of the Additional Fees disputed by the Debtors. If the Court announced at the August 19, 2026 hearing that RBL could withhold delivery of releases and satisfaction of its judgment pending resolution of a dispute over Additional Fees, that ruling is amended by this Order. In most section 363 sales, liens for disputed amounts do not remain liens on the property subject of the sale pending resolution of the dispute but instead become liens attaching to the proceeds. In this case, the liens will attach to the disputed portion of the Additional Fees that will be held in the Debtors' Counsel's Trust Account.

**9. Property Taxes.** Ad valorem real property taxes and assessments against the Property due for tax years 2025 or earlier, if any, shall be paid at closing from the sale proceeds. Ad valorem real property taxes and assessments for the tax year in which the closing occurs shall be prorated between the Debtors and the purchaser as of 11:59 p.m. on the day immediately preceding the closing, as provided in Section 12.2 of the PSA, and, together with ad valorem real property taxes for subsequent years, constitute Permitted Exceptions to which title to the Property is conveyed subject, as provided in Section 9.2 of the PSA.

**10. City Fines and Code-Enforcement Claims.** Fines, penalties, code-enforcement obligations, or related amounts asserted by the City of Miami shall either be paid at closing to the extent authorized or, to the extent not paid at closing, shall remain a continuing lien on the Property with the same validity, priority, extent, and enforceability that existed against the Property immediately before the closing, and title to the Property shall pass subject to any such unpaid amounts. All rights, claims, objections, defenses, and disputes of the parties are preserved, and nothing in this Order adjudicates the amount, validity, or priority of any disputed City claim.

**11. Broker Commissions.** (a) Upon the closing of the sale, the Broker is authorized and entitled to receive a real estate commission equal to 0.75% of the gross purchase price ($375,000) based upon a $50,000,000 purchase price, consistent with the terms previously approved by this Court; (b) the Buyer's Broker shall likewise receive a real estate commission equal to 0.75% of the gross purchase price ($375,000) based upon a $50,000,000 purchase price, consistent with the terms previously approved by this Court; (c) the settlement agent responsible for disbursing closing proceeds is authorized and directed to pay such commissions directly to the Broker and the Buyer's Broker from the closing proceeds at closing, without further order of this Court; and (d) the entitlement of the Broker and the Buyer's Broker to receive their commissions as set forth herein is approved and allowed, and no further application, fee motion, or order shall be required as a condition to payment of such commissions upon the closing of the sale. If the closing does not occur, neither the Broker nor the Buyer's Broker shall have any claim for payment of an administrative expense.

**12. Debtors' Counsel's Interim Compensation.** The interim compensation consisting of expenses in the amount of $5,346.88 (representing 100% of expenses incurred) and $144,120 in fees (representing 80% of fees requested), less a $15,000 retainer, for a total sum of $149,466.88, awarded in the Court's Amended Order Granting Interim Fee Application of Joel M. Aresty, P.A. (DE #309), shall be paid to Joel M. Aresty, P.A. at closing.

**13. Closing Costs.** All ordinary and necessary closing costs and prorations shall be paid at closing as provided in the PSA.

**14. Custody and Disposition of Sale Proceeds.** All sale proceeds not required to be paid at closing pursuant to the foregoing provisions of this Order shall be paid directly into the Debtors' Counsel's Trust Account (the trust account of Joel M. Aresty, P.A.) and shall remain in said trust

account pending further order of this Court regarding distribution. The sale proceeds deposited in the Debtors' Counsel's Trust Account are preserved and remain subject to the jurisdiction of this Court, and the deposit of proceeds into that account does not constitute a distribution to the Debtors or to any creditor. No party may withdraw, transfer, distribute, encumber, or otherwise dispose of such proceeds absent further order of this Court, with the exception of payment of United States Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930 ("U.S. Trustee Fees") which fees shall be paid without further order of Court when due and with sufficient amounts reserved for future U.S. Trustee Fees that may arise while the case remains open. All valid liens, claims, interests, and encumbrances that were not satisfied at closing (other than the ad valorem real property tax liens and the City of Miami claims addressed in paragraphs 9 and 10, which are treated as provided in those paragraphs) shall attach to such proceeds with the same validity, priority, extent, and enforceability they had against the Property immediately before the closing, subject to all rights, claims, objections, defenses, and challenges that existed before the closing. A separate escrow or trust account (separate from Debtors' Counsel's Trust Account) shall not be required with respect to any disputed claim.

**15. Reporting.** The Debtors shall report the sale in their Monthly Operating Report or Quarterly Post Confirmation Reports and shall include all receipts and disbursements made at the closing by or on behalf of the Debtors. The Debtors remain responsible for the payment of all applicable United States Trustee quarterly fees.

**16. Notice of Closing or Default.** Debtors' counsel shall file a Notice of Closing within one business day after the closing, or, if the closing does not occur on or before the Closing Deadline, a Notice of Default attesting that the closing did not occur and requesting a further hearing.

**17. Governmental Units.** This Order is binding upon and enforceable against all

governmental units to the maximum extent permitted by law. Each governmental and recording authority is authorized and directed to accept and record any instrument necessary to effectuate the transfer of the Property free and clear as provided in this Order.

**18. Transfer Taxes.** The Court has entered, or will enter prior to or contemporaneously with this Order, an order confirming the Plan under 11 U.S.C. § 1129. Because the sale and the transfer of the Property are made under a plan confirmed under 11 U.S.C. § 1129, the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the sale shall be exempt from documentary stamp taxes, surtaxes, transfer taxes, recording taxes, mortgage taxes, and similar taxes pursuant to 11 U.S.C. § 1146(a), and each recording officer and governmental unit is directed to accept for recording, and to record, any such instrument without the payment of any such tax.

**19. Section 363(m).** Pursuant to 11 U.S.C. § 363(m), the reversal or modification on appeal of the authorization of the sale in this Order shall not affect the validity of the sale to Ramos, as a good-faith purchaser, unless this Order and the sale are stayed pending appeal.

**20. Back-Up Bid and Other Relief.** In the event the sale to Ramos does not close on or before the Closing Deadline, upon the filing of a Notice of Default by the Debtors or a motion by RBL, the Court will schedule a hearing to consider the deferred objections to RBL's back-up bid and whether to approve a sale to RBL as the back-up bidder or grant other relief and at that scheduled hearing, without further notice and the Court may enter an order establishing procedures for the resolution of those objections and any further proceedings, if necessary.[4]

**21. Retention of Jurisdiction.** The Court retains jurisdiction to interpret, implement, and enforce this Order, the PSA, as modified by this Order, the Sale Procedures Order, and the Sale

[4] The Court is adopting the revisions proposed by the Office of the United States Trustee.

Documents; to compel payment of the purchase price and the payments required by this Order; to compel the Debtors and their representatives to execute and deliver the Sale Documents; to confirm the transfer of title to the purchaser; to resolve any dispute arising in connection with the closing or the disposition of the sale proceeds; and, in the event of non-compliance by the Debtors or their representatives, to direct the appointment of a Chapter 11 trustee to consummate the sale. Notwithstanding the foregoing, the Court acknowledges that the Debtors entered into a Joint Venture Agreement in conjunction with the PSA but the Court does not retain, and expressly declines to reserve, jurisdiction to adjudicate any dispute arising under the Joint Venture Agreement (including the joint venture provisions of the PSA), and no such dispute shall prevent, delay, or condition the closing.

**22. Effectiveness; Rule 6004(h).** This Order shall be effective and enforceable immediately upon entry, and the fourteen-day stay under Federal Rule of Bankruptcy Procedure 6004(h) is waived.

**23. Continuing Effect.** All provisions of the Sale Procedures Order remain in full force and effect except as expressly modified by this Order. This Order shall be binding upon the Debtors, the purchaser, their agents, all creditors and parties in interest, and their respective successors and assigns, including any trustee subsequently appointed in these cases.

###

Attorney Joel Aresty is directed to serve a conformed copy of this Order on all interested parties and to file a Certificate of Service.

**EXHIBIT A**
**LEGAL DESCRIPTION**

The real property located at 4865 NW 7 Street, Miami, Florida 33126, consisting of three (3) land lots bearing Tax Folio Nos. 01-3131-010-0050, 01-3131-010-0051, and 01-3131-010-0052, more particularly described as follows:

**PARCEL 1:**

THAT PART OF TRACT NO. 2, OF PLAT OF THAT PORTION OF THE SOUTHEAST 1/4 OF SECTION 31, TOWNSHIP 53 SOUTH, RANGE 41 EAST, LYING SOUTH AND SOUTHEAST OF TAMIAMI CANAL, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, AT PAGE 10, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA; LYING AND BEING IN THE CITY OF MIAMI, MIAMI-DADE COUNTY, FLORIDA. COMMENCE AT THE CONCRETE MONUMENT SET IN THE PAVEMENT OF NORTHWEST 7TH STREET AT THE SOUTHEAST CORNER OF SAID SECTION 31; THENCE RUN NORTH 01 DEGREES 38' 30" EAST ALONG THE EAST LINE OF SAID SECTION 31, THE SAME LINE BEING THE EAST LINE OF SAID TRACT NO. 2 AND ALSO THE ZONED CENTERLINE OF NORTHWEST 47TH AVENUE, FOR A DISTANCE OF 40.02 FEET; THENCE WEST ALONG A LINE BEING 40 FEET NORTH OF AND PARALLEL WITH THE SOUTH LINE OF SAID SECTION 31, FOR 1114.00 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREINAFTER DESCRIBED; THENCE CONTINUE WEST ALONG THE LAST DESCRIBED LINE, FOR 130.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST PARALLEL WITH THE EAST LINE OF SAID SECTION 31, FOR 145.10 FEET; THENCE WEST FOR 160.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST, FOR 100.00 FEET; THENCE WEST FOR 29.40 FEET; THENCE NORTH FOR 668.33 FEET; THENCE NORTH 41 DEGREES 50' 55" EAST, FOR 21.94 FEET TO A POINT CURVE; THENCE NORTHEASTERLY-SOUTHERLY ALONG THE ARC OF SAID CURVE TO THE RIGHT, BEING CONCAVE TO THE SOUTHWEST AND HAVING A RADIUS OF 50.00 FEET AND A CENTRAL ANGLE OF 141 DEGREES 39' 05", FOR AN ARC DISTANCE OF 123.61 FEET; THENCE SOUTH 03 DEGREES 30' 00" WEST, FOR 386.21 FEET TO A POINT OF CURVE; THENCE SOUTHEASTERLY-NORTHEASTERLY ALONG THE ARC OF SAID CURVE TO THE LEFT, BEING CONCAVE TO THE NORTHEAST AND HAVING A RADIUS OF 45.00 FEET AND A CENTRAL ANGLE OF 160 DEGREES 16' 10", FOR AN ARC DISTANCE OF 125.87 FEET; THENCE SOUTH FOR 242.27 FEET; THENCE EAST FOR 154.92 FEET; THENCE SOUTH 01 DEGREES 38' 30" WEST, FOR 245.10 FEET TO THE POINT OF BEGINNING.

**PARCEL 2:**

THAT PART OF TRACT NO. 2, OF PLAT OF THAT PORTION OF THE SOUTHEAST 1/4 OF SECTION 31, TOWNSHIP 53 SOUTH, RANGE 41 EAST, LYING SOUTH AND SOUTHEAST TAMIAMI CANAL, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, AT PAGE 10, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA; LYING AND BEING IN THE CITY OF MIAMI, MIAMI-DADE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCE AT THE CONCRETE MONUMENT SET IN THE PAVEMENT OF NORTHWEST 7TH STREET AT THE SOUTHEAST CORNER OF SAID SECTION 31; THENCE WEST ALONG THE SOUTH LINE OF SAID SECTION 31, FOR 1114.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST PARALLEL WITH THE EAST LINE OF SAID SECTION 31, FOR 285.12 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREINAFTER DESCRIBED; THENCE WEST PARALLEL WITH THE SOUTH LINE OF SAID SECTION 31, FOR 154.92 FEET; THENCE NORTH FOR 242.27 FEET TO THE INTERSECTION WITH THE ARC OF A CIRCULAR CURVE, SAID POINT BEARS SOUTH 66 DEGREES 46' 10" EAST FROM THE CENTER OF THE FOLLOWING DESCRIBED CURVE; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE, BEING CONCAVE TO THE NORTHWEST, HAVING A RADIUS OF 45 FEET AND A CENTRAL ANGLE OF 14 DEGREES 43' 50", FOR AN ARC DISTANCE OF 11.57 FEET TO A POINT OF REVERSE CURVE; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE SOUTHEAST, HAVING A RADIUS OF 190 FEET AND A CENTRAL ANGLE OF 68 DEGREES 07' 27", FOR AN ARC DISTANCE OF 225.93 FEET TO A POINT OF COMPOUND CURVE; THENCE EASTERLY-SOUTHERLY ALONG THE ARC OF SAID CURVE, BEING CONCAVE TO THE SOUTHWEST, HAVING A RADIUS OF 50 FEET AND A CENTRAL ANGLE OF 98 DEGREES 57' 11", FOR AN ARC DISTANCE OF 86.35 FEET TO A POINT OF TANGENCY; THENCE SOUTH 04 DEGREES 32' 49" EAST, FOR 156.19 FEET TO A POINT OF CURVE OF CIRCULAR CURVE TO THE LEFT; THENCE SOUTHERLY-EASTERLY ALONG THE ARC OF SAID CURVE, BEING CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 45 FEET AND A CENTRAL ANGLE OF 73 DEGREES 27' 08", FOR A DISTANCE OF 57.69 FEET TO A POINT OF TANGENCY; THENCE SOUTH 77 DEGREES 59' 57" EAST, FOR 65.17 FEET TO A POINT OF CURVE OF A CIRCULAR CURVE TO THE LEFT; THENCE EASTERLY-NORTHEASTERLY ALONG THE ARC OF SAID CURVE, BEING CONCAVE TO THE NORTH, HAVING A RADIUS OF 35 FEET AND A CENTRAL ANGLE OF 52 DEGREES 44' 30", FOR A DISTANCE OF 32.22 FEET; THENCE SOUTH 40 DEGREES 44' 27" EAST ALONG A LINE RADIAL TO THE LAST DESCRIBED CURVE, FOR 31.22 FEET; THENCE EAST FOR 170.58 FEET; THENCE SOUTH FOR 142.17 FEET; THENCE WEST FOR 385.83 FEET TO THE POINT OF BEGINNING.

**PARCEL 3:**

THAT PART OF TRACT NO. 2, OF PLAT OF THAT PORTION OF THE SOUTHEAST 1/4 OF SECTION 31, TOWNSHIP 53 SOUTH, RANGE 41 EAST, LYING SOUTH AND SOUTHEAST TAMIAMI CANAL, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, AT PAGE 10, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA; LYING AND BEING IN THE CITY OF MIAMI, MIAMI-DADE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCE AT THE CONCRETE MONUMENT SET AT THE PAVEMENT OF NORTHWEST 7TH STREET, SAID MONUMENT BEING ALSO THE SOUTHEAST CORNER OF SAID SECTION 31; THENCE WEST ALONG THE SOUTH LINE OF SAID SECTION 31, FOR 1114.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST PARALLEL WITH THE EAST LINE OF SAID SECTION 31, FOR 40.02 FEET; THENCE WEST ALONG A LINE 40.00 FEET NORTH OF AND PARALLEL WITH THE SOUTH LINE OF SAID SECTION 31, FOR 130.01 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST, FOR 145.10 FEET; THENCE WEST FOR 160.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST, FOR 100.00 FEET; THENCE WEST FOR 29.40 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE ALONG THE LAST DESCRIBED COURSE FOR 77.23 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST, FOR 601.61 FEET TO A POINT ON A CIRCULAR CURVE, SAID POINT BEARS SOUTH 47 DEGREES 55' 12" WEST FROM THE CENTER OF THE FOLLOWING DESCRIBED CURVE; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CIRCULAR CURVE TO THE LEFT, BEING CONCAVE TO THE NORTHWEST, HAVING A RADIUS OF 1395.08 FEET AND A CENTRAL ANGLE OF 00 DEGREES 13' 54", FOR AN ARC DISTANCE OF 5.64 FEET TO A POINT OF TANGENCY; THENCE NORTH 41 DEGREES 50' 55" EAST, FOR 84.27 FEET; THENCE SOUTH FOR 668.33 FEET TO THE POINT OF BEGINNING.

# EXHIBIT C

E-mail from the Honorable Robert A. Mark, U.S.B.J., to all counsel dated August 27, 2026

In re 7 At Blue Lagoon (1), LLC and 7 At Blue Lagoon (2), LLC

Case No. 25-21286-RAM (Bankr. S.D. Fla.)

Debtors' Emergency Motion for Stay Pending Appeal (Fed. R. Bankr. P. 8007)

**TRUE AND CORRECT COPY OF E-MAIL**

---

**From:** Robert Mark <Robert_Mark@flsb.uscourts.gov>
**Sent:** Thursday, August 27, 2026, 12:28 PM ET (received 12:30 PM ET)
**To:** Vincent F. Alexander; all counsel and parties of record (Katherine Gange; Patricia Arias; Joel Aresty; Peter H. Levitt; Brett Amron; Steven D. Schneiderman; Sundeep Mullick; Michael Dunn; Jason Welt; Adeena Weiss; Juan C. Zorrilla; Martin McCarthy; Caroline Weiss; Weiss Ortiz P.C.)
**Subject:** RE: In re 7 At Blue Lagoon (1), LLC, Case No. 25-21286-RAM — RAM redline
**Attachment:** Blue Lagoon Sale Order RAM redline.docx

Counsel:

The sale order has been signed and docketed. I'm attaching a redline of the RBL proposed order so you can see most of the changes. The signed order includes some minor style and non-substantive changes not shown in the attached.

For further guidance, I do not intend to conduct any further hearings in this case prior to the September 10th closing date.

Judge Mark