# EXHIBIT B

Order Denying Motion for Stay Pending Appeal [Bankr. ECF No. 323], entered September 2, 2026

*INSERT: the DE 323 PDF attached to today's DocketBird e-mail. Delete this note after inserting.*

**ORDERED in the Southern District of Florida on September 2, 2026.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re: Chapter 11 Cases

7 AT BLUE LAGOON (1), LLC, and Case No. 25-21286-RAM
7 AT BLUE LAGOON (2), LLC, Case No. 25-21287-RAM
(Jointly Administered)

Debtors.
_________________________________/

**ORDER DENYING MOTION FOR STAY PENDING APPEAL**

The motion for stay pending appeal[1] that is subject of this Order is nothing more than a legally deficient effort by the Debtors to buy more time and avoid the agreed-upon consequences of their failure to meet agreed-upon deadlines to refinance or sell their property.

---

[1] Debtors' Emergency Motion for Stay Pending Appeal of (I) Paragraph 6 of the July 29, 2026 Order [ECF No. 278] and The Trustee-Upon-Default Provisions of ECF Nos. 278, 283, and 310, (II) Paragraph 20 of the Sale Order [ECF No. 310], and (III) The Confirmation Order [ECF No. 308] to the Extent it Removes the Refinancing Option, and Request for Determination Without Hearing [DE# 317] (the "Motion for Stay").

The Debtors continue to sing the same song they have been singing since they defaulted on the note secured by a first mortgage on their property nearly four years ago in October 2022. It's a song they first sung to the state court judge in the foreclosure case and a song they have been singing in this Court since the time they filed this case to stop the foreclosure sale. The essential words in the now-tired chorus are: "Judge, there is substantial equity in our property. We'll suffer a great loss if the property is foreclosed."

Whether or not there is equity in the property, agreed orders have meaning and failure to comply with deadlines in agreed orders has consequences. This Court enforces remedies clearly expressed in agreed orders. More time to pursue a frivolous appeal is not one of the remedies. The Motion for Stay will be denied.

## I. Background Facts and Procedural History

The Debtors, 7 at Blue Lagoon (1), LLC and 7 at Blue Lagoon (2), LLC (the "Debtors") filed these Chapter 11 cases on September 26, 2025. The Debtors' cases are jointly administered. *See* DE# 4. The Debtors failed to repay a loan held by their largest secured creditor, TIG Romspen US Master Mortgage LP ("Romspen"), at maturity and defaulted under the loan documents by failing to pay their 2020, 2021 and 2022 real estate taxes. *See* DE# 17 at ¶¶ 6-7. A foreclosure judgment was entered against the Debtors in Case Number: 2023-017596-CA-01, pending in the Complex Business Division before Judge Rebull. DE# 17, Ex. 5. Shortly thereafter, the state court entered a supplemental final judgment in favor of Romspen setting a foreclosure sale date of September 29, 2025. DE# 17, Ex. 11. The Debtors filed the instant cases the day before the scheduled sale.

Based on the history of the cases, including the Debtors repeated unsuccessful attempts to delay the foreclosure sale in the state court, RIC (Blue Lagoon) LLC ("RBL"), as Assignee of Rompsen, filed a Motion to Dismiss Chapter 11 Cases or, Alternatively, for Appointment of Chapter 11 Trustee [DE# 17] (the "Motion to Dismiss") on October 9,2025. After the Debtor filed its response to the Motion to Dismiss [DE# 32], to which RBL replied [DE# 36], the Motion to Dismiss was set for evidentiary hearing.

The Debtors then filed their Motion to Continue Hearing December 17, 2025 [DE# 48]. The Court conducted a hearing on the motion to continue on November 13, 2025. Following that hearing, the Court ordered that an evidentiary hearing would be held on January 23, 2026, and encouraged the Debtor and RBL to consider resolving the Motion to Dismiss by agreement. *See* DE# 53.

Prior to the scheduled evidentiary hearing, the Debtors and RBL negotiated and submitted an agreed order that abated the Motion to Dismiss, specifically, the Unopposed Order Continuing Hearings, Requiring Compliance with Procedures for Marketing and Sale of Debtors' Real Property and Granting Other Relief [DE# 175] (the "January Agreed Order").

The January Agreed Order set the following deadlines: (1) Debtors must file a Motion for a Section 363 sale by July 15, 2026; (2) the sale shall take place on or before August 15, 2026; (3) a hearing to approve the sale shall occur within three (3) business days after the sale, and the closing shall occur within fifteen (15) business days after Court approval; and (4) the Debtors have the right to cancel the sale process if they obtain refinancing and pay RBL's secured claim on or before April 15, 2026 (the

"Refinancing Deadline"). *See* Unredacted January Agreed Order [DE# 246-2]. It also provided that, "[i]f the Debtors fail to comply with the deadlines set forth herein, RBL shall be entitled to the entry of an order granting the relief requested in its Trustee Motion (dismissal or the appointment of a trustee)."[2] January Agreed Order at ¶ 12.

On April 14, 2026, a day before the Refinancing Deadline, the Debtors filed their Expedited Motion for an Extension of Time to Exercise Refinancing Option and Pay RBL Secured Claim in Full [DE# 223] (the "Financing Motion"), which RBL opposed (*see* RBL's Response to the Financing Motion [DE# 224]). The Court denied the Refinancing Motion in its Order (1) Denying Motion for Extension, (2) Denying Financing Motion, and (3) Reserving Ruling on Approval of Disclosure Statement and Confirmation of Chapter 11 Plan [DE# 234]. That Order provided that the Refinancing Deadline "has expired and is not subject to extension, absent consent by [RBL]." DE# 234 at ¶ 1. It also provided that the Financing Motion was "denied without prejudice to the Debtor filing a motion seeking approval of a refinancing that has no remaining contingencies and will pay all allowed claims in full." *Id*. at ¶ 2. Paragraph two does not alter paragraph one, which unequivocally requires RBL's consent to extend the Refinancing Deadline. *See id.*

In July of 2026, the Debtors attempted again to obtain approval of an untimely refinancing through the Debtors' Expedited Motion for Status Hearing and to Shorten Time for Entry of Order (I) Conditionally Approving Amended Disclosure Statement and Confirming Joint Plan of Reorganization and Conditionally Authorizing the Debtor to Obtain Postpetition Financing of $35 Million to Fund Chapter 11 Plan, (II) Granting

---

[2] Such relief would only be granted after a hearing. *See* January Agreed Order at ¶ 12.

Liens, (III) Approving Use of Loan Proceeds, (IV) Providing Adequate Protection, and (V) Scheduling a Final Hearing [DE# 254] (the “Second Financing Motion”) and the Debtors’ Expedited Motion for Status Hearing to (I) Conditionally Approve Amended Disclosure Statement and Confirm Joint Plan of Reorganization; (II) Conditionally Approve the Sale of Real Property Free and Clear of Liens, Claims, and Encumbrances, Same to Attach to Proceeds, Approve Bidding Procedures, Stalking-Horse Protections, and Form of Notice; and (III) Conditionally Schedule an Auction on August 14, 2026 and Final Hearing August 17, 2026 [DE# 255] (the “Expedited Sale Motion”).

The Court denied the Second Financing Motion and the Expedited Sale Motion in its Order (I) Denying the Sale Motion with a Stalking Horse Bidder Without Prejudice, (II) Denying the Refinancing Motion with Prejudice, (III) Establishing a Deadline for Filing an Agreed Sale Motion, and (IV) Providing for Appointment of a Chapter 11 Trustee Upon Default [DE# 278] (the “Order Denying Expedited Sale Motion and Refinancing Request”). That Order gave the parties until 5:00 p.m. (prevailing Eastern Time) on July 30, 2026, to file an agreed sale motion that included bid procedures and a proposed agreed order. *See id.*

An agreed sale motion was filed on July 30, 2026 [DE# 281], and the following day the Court entered an Agreed Order on Bid and Sale Procedures for Auction Sale of Debtors’ Property and Setting Sale Hearing [DE# 283] (the “Agreed Sale Procedure Order”). That Order provided that “the Court will enter an order directing the Office of the United States Trustee to appoint a Chapter 11 Trustee if Debtors fail to satisfy any of the deadlines, procedures, or conditions set forth in this Order.” Agreed Sale Procedure Order at ¶ 8. The Court does not interpret this provision to mandate the

appointment of a trustee if the Buyer under the purchase and sale agreement fails to close. The next steps upon failure to close are described later in this Order. *See, infra* Section II p. 12.

On Sunday August 9, 2026, the day before bids were due pursuant to the Agreed Sale Procedure Order, the Debtors filed an Emergency Motion to (I) Approve Private Sale of Real Property to Jorge Ramos Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 105(a), 363(b) and 363(f) and Fed. R. Bankr. P. 6004(f)(1); (II) Approve Joint Venture Agreement; (III) Modify the Agreed Bid and Sale Procedures Order [ECF No. 283] to the Extent Necessary; (IV) Authorize Payment in Full of All Creditors and Escrow of the Disputed Schlesinger Fees; (V) Waive the Stay Under Fed. R. Bankr. P. 6004(h); and (VI) Confirm Plan [DE# 289] (the "Motion to Approve Private Sale"). The Debtors sought approval of a $50,000,000 private sale to Jorge Ramos. *See id*. The Debtors also filed a Motion for Reconsideration of [the Order Denying Expedited Sale Motion and Refinancing Request] [DE# 292] (the "Motion to Reconsider") seeking reconsideration of paragraph 6, denying the Second Financing Motion, paragraph 4, the provision regarding appointment of a trustee in the event of noncompliance, and the other paragraphs to the extent that they could prevent the proposed sale. *See* Motion to Reconsider at ¶ 2. The Court's Order requiring RBL's consent to extend the Refinancing Deadline remained in full effect. *See* DE 234 at ¶ 1. RBL objected to the Motion to Approve Private Sale, citing, *inter alia*, the already agreed upon bid and sale procedures for an auction sale. *See* DE# 293.

Following an emergency hearing conducted on August 12, 2026, the Court entered its Order (1) Denying Motion to Approve Private Sale, (2) Denying Motion to

Reconsider, and (3) Conditionally Allowing the Buyer to Participate in Auction [DE# 297] (the "August 13th Order"). That Order denied for at least the third time the Debtors' untimely request to approve a refinancing and denied the Motion to Approve Private Sale and the Motion to Reconsider. However, the August 13th Order allowed Mr. Ramos to participate in the auction, subject to conditions imposed in the Order.

Mr. Ramos complied with the August 13th Order, submitted a qualified and winning bid, and, after carefully reviewing competing forms of order, on August 22nd the Court entered its Order Approving Sale of Debtors' Property Free and Clear of Liens, Claims, Interests, and Encumbrances [DE# 310] (the "Order Approving Sale"). That Order provided that "[t]he closing shall occur on or before September 10, 2026." Order Approving Sale at ¶ 4. Pursuant to that Order, Mr. Ramos must "pay the balance of $49,000,000 in cleared funds at closing" or forfeit his deposit as "the Debtors' 'sole and exclusive remedy at law or in equity.'" *Id*. at ¶¶ 3-4 (quoting the PSA[3] at ¶ 15.1).

According to the Motion for Stay, Mr. Ramos may be unable to fund the $49,000,000 balance. *See* Motion for Stay at 2. As stated in the Motion for Stay, the Debtors have appealed provisions in several orders, including the Agreed Sale Procedures Order, the Order Denying Expedited Sale Motion and Refinancing Request, and the Order Approving Sale. *See* Motion for Stay at 2; Debtors' Amended Notice of Appeal [DE# 313]. The Debtors continue to sing and, in their appeal, will attempt to convince the district court that somehow, they still have the right to remain as debtors-in-possession and obtain approval of a refinancing rather than facing the music of the

[3] "PSA" shall refer to the agreement located at DE# 289, Ex. A. pp. 10-25.

agreed upon consequences of a failed closing. The appeal has no merit. The January Agreed Order remains in full effect and will be enforced.

## II. Discussion

"Unless stayed, orders and judgments entered by this Court are immediately enforceable upon entry. Even if an appeal is filed, absent a stay the prevailing party or parties may treat the order or judgment as final." *In re Palm Greens at Villa Del Ray Recreation Condo. Ass'n, Inc.*, No. 26-11060-EPK, 2026 WL 1751615, at *6 (Bankr. S.D. Fla. June 17, 2026). The kind of relief the Debtors seek in its Motion for Stay is an "'extraordinary remedy' and the party seeking it must show: '(1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the[m] unless the [stay] is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest.'" *Id*. at *7 (quoting *Woide v. Fannie Mae (In re Woide)*, 730 F. App'x 731, 737 (11th Cir. 2018)).

The Debtors must show that they are substantially likely to prevail on the merits of their appeal. They have not. The Court's analysis begins and ends with the agreed orders described above, including the January Agreed Order. In addition to the deadlines described above, the January Agreed Order includes a paragraph stating that "[t]he Debtors have knowingly and voluntarily consented to this Order with the benefit of advice of counsel." January Agreed Order at ¶ 17. Moreover, RBL provided meaningful consideration in exchange for the Debtors' agreement to the deadlines and remedies in the Order. *See id.* at ¶ 10 (providing that RBL will not seek appointment of a trustee, dismissal, or stay relief so long as the Debtor complies with the terms of the January

Agreed Order). This Court's enforcement of those deadlines and remedies is supported by compelling and convincing authority.

An "agreed order" is "[a] court order that all parties agree to."[4] Agreed orders, like consent decrees, "have attributes both of contracts and of judicial decrees." *Local No. v. City of Cleveland*, 478 U.S. 501, 519 (1986) (citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 235-237 (1975). The Supreme Court has emphasized time and time again "the voluntary nature of a consent decree is its most fundamental characteristic." *Id.* at 521-22; *see also U.S. v. ITT Continental*, 420 U.S. at 235-237; *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971); *see e.g. United States v. Atlantic Refining Co.*, 360 U.S. 19, 23 (1959) (declining to adopt a modified interpretation that would substantially change the terms "of a decree to which the parties consented"); *Hughes v. United States*, 342 U.S. 353, 357-58 (1952) (same). The importance of enforcing agreed orders is grounded in this most fundamental characteristic:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve.

*U.S. v. Armour & Co.*, 402 U.S. at 681-82 (emphasis in original) (footnote omitted).

---

[4] Agreed orders are treated the same as Consent Decrees (defined as "a court decree that all parties agree to") *Consent Decree*, BLACK'S LAW DICTIONARY (12th ed. 2024), and Settlement Agreements (defined as "an agreement ending a dispute") *Settlement Agreement*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see Pottinger v. City of Miami*, 805 F.3d 1293, 1299 (11th Cir. 2015) ("[a] settlement agreement ... is the functional equivalent of a consent decree...").

The parties' voluntary agreement serves as the source of the court's authority to enter any agreed order at all. *See Reynolds v. Roberts*, 251 F.3d 1350, 1357 (11th Cir. 2001) (citing *Local No. 93 v. City of Cleveland*, 478 U.S. at 522); *see also United States v. Ward Baking Co.*, 376 U.S. 327 (1964) (a court cannot enter a consent decree to which one party has not consented). "More importantly, it is the agreement of the parties, rather than the force of the law upon which the [controversy] was originally based, that creates the obligations embodied" in an agreed order. *Local No. 93 v. City of Cleveland*, 478 U.S. at 521. For enforcement purposes, the contractual nature of an agreed order controls because "the scope of a consent decree must be discerned within its four corners, and not by reference to what *might satisfy the purposes of one of the parties to it*." *U.S. v. Armour & Co.*, 402 U.S. at 682 (emphasis added); *N.A.A.C.P., Jacksonville Branch v. Duval County School*, 273 F.3d 960, 966 (11th Cir. 2001).

That point is important here. The Debtors' purpose in agreeing to the terms of the January Agreed Order was presumably to avoid the time, expense, and risk of a contested hearing on the Motion to Dismiss and to preserve the Debtors' alleged equity in the property. However, it is not appropriate for the Court to deviate from the provisions in the January Agreed Order just because enforcement will be contrary to that purpose.

In the bankruptcy context, if a court were to reconsider previously agreed orders "it would undermine the authority of the Court and discourage parties from utilizing agreed orders in future bankruptcy proceedings." *In re SAL ATX LLC*, 660 B.R. 795, 817 (Bankr. W.D. Tex. 2024). As one bankruptcy court articulated:

> Enforcement of court orders is essential to the efficient administration of bankruptcy cases. This Court's docket is generally filled with hundreds of cases per week. If all or even a majority of matters required full evidentiary hearing or trial, it would create a backlog and interfere with the normal

> docket flow of the Court. Additionally, many matters coming before this Court can easily be resolved by competent and diligent counsel. Hence, agreed orders are encouraged and routinely entered. The efficacy of such orders depends largely on the enforcement thereof. ... *To relieve one party of its obligations under an agreed order is to deprive the other party of the benefit of its bargain.* Furthermore, failure of the Court to enforce agreed orders would likely have a chilling effect on settlements and only serve to proliferate more litigation. Hence, the Court acknowledges the strong public policy considerations supporting enforcing agreed orders and finds them applicable to the instant case.

*In re Mohajer 12 Corp.*, No. 18-2674, 2021 WL 287805, at *4 (Bankr. S.D. Ala. Jan. 22, 2021) (emphasis added). This Court concurs with the Alabama court's conclusion. RBL is entitled to the benefit of its bargain.

The Debtors persist in seeking approval of a refinancing, exhausting all efforts to achieve a result they would like. But that ship has sailed. The January Agreed Order required the Debtors to sell their property unless they obtained refinancing and paid RBL's secured claim by April 15, 2026. *See* Unredacted January Agreed Order [DE# 246-2 at ¶ 9]. RBL bargained for and the Debtors agreed to that deadline. RBL has not consented to extending the deadline and, as it has in several prior orders, the Court will continue to enforce that deadline. Therefore, the Court finds that the Debtors have not shown a likelihood of success in an appeal that seeks relief allowing a refinancing—relief expressly precluded by the January Agreed Order. To the contrary, the appeal is frivolous.

The Motion for Stay also fails to establish each of the other factors necessary to obtain a stay pending appeal. First, the Court does not find the Debtors' potential loss of equity in their property to be a risk of irreparable harm when that result is a consequence agreed to by the Debtors. Second and conversely, RBL will suffer substantial harm because granting a stay will deprive it of the relief it bargained for. Finally, to the extent

there is a public interest in this decision, a stay would be contrary to the public interest in enforcing agreed orders entered in bankruptcy cases.

**What Happens Next**

As described above, there have been some twists and turns along the way, but the following facts are clear:

1. The Debtors did not obtain refinancing and pay RBL its secured claim by April 15, 2026;
2. RBL has never consented to an extension of the April 15th deadline;
3. If Mr. Ramos fails to close on or before September 10, 2026, RBL is entitled to seek approval of its credit bid; and
4. If the Court does not approve RBL's credit bid, RBL is entitled to the relief it bargained for in the January Agreed Order, namely an Order dismissing this case or an Order appointing a chapter 11 trustee.

So, if the Ramos sale does not close, what happens next in this case will be precisely what the Debtors agreed would happen. First, Mr. Ramos' $1,000,000 deposit will be forfeited to the Debtors' estate as the Debtors' sole remedy, and the Court will schedule a hearing to consider the deferred objection to RBL's back-up bid. *See* Order Approving Sale [DE# 310 at ¶ 20]. If the sale to RBL is not approved, then at that same hearing, the Court will consider arguments on whether to appoint a chapter 11 trustee or dismiss the case. This is the remedy that RBL bargained for and the Debtors agreed to in the January Agreed Order.[5] It's that simple.

---

[5] "If the Debtors fail to comply with the deadlines set forth herein, RBL shall be entitled to the entry of an order granting the relief requested in its Trustee Motion (dismissal or the appointment of a trustee)." January Agreed Order at ¶ 12.

## III. Conclusion

When a song is played on repeat, the words begin to lose their meaning. If the Debtors file a renewed motion in the district court seeking a stay, they can continue to "sing" about their alleged equity in the property, the alleged lack of prejudice to RBL and the benefits of a refinancing. But in this Court, on this Motion for Stay, the Debtors' "words", as spoken in agreed orders, retain their meaning. The Court ORDERS as follows:

1. The Motion for Stay is denied.

2. The Clerk is directed to send a copy of this order to the District Court to be docketed in the appeal, Case No. 26-cv-25926-AHS.

###

Copy to:

Joel M. Aresty, Esq.

**(Attorney Aresty is directed to serve a copy of this Order on all interested parties and file a Certificate of Service)**