**ORDERED in the Southern District of Florida on August 27, 2026.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

| | |
|---|---|
| 7 AT BLUE LAGOON (1), LLC<br>7 AT BLUE LAGOON (2), LLC | Case 25-21286-RAM<br>Jointly administered with<br>Case 25-21287-RAM |
| Debtors.<br>_______________________________/ | Chapter 11 |

**ORDER APPROVING SALE OF DEBTORS' PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

**THIS MATTER** came before the Court for hearing on August 19, 2026, at 3:30 p.m. (the "Sale Hearing") upon the Debtors' Agreed Motion to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. § 363(f) (DE #281) (the "Sale Motion"); the Agreed Order on Bid and Sale Procedures for Auction Sale of Debtors' Property and Setting Sale Hearing (DE #283) (the "Sale Procedures Order"); the Order (1) Denying Motion to Approve Private Sale, (2) Denying Motion to Reconsider, and (3) Conditionally Allowing the Buyer to Participate in Auction (DE #297) (the

"August 13, 2026 Order"); the Debtors' Notice Confirming Receipt of Funds and of Unconditional Deposit (DE #299); the Debtors' Notice of Filing Notice of Auction Results (DE #300) (the "Notice of Auction Results"); Michael J. Schlesinger, P.A.'s Limited Objection to Back-Up Bid of RBL (DE #301); and RBL's Response to Limited Objection and to Report of Auction (DE #302). The property being sold (the "Property") is described in paragraph 2(a) of the Sale Procedures Order. "RBL" means RIC (Blue Lagoon) LLC. The "PSA" means the Purchase and Sale and Joint Venture Agreement between the Debtors and Jorge Ramos and his successors and/or assigns ("Ramos") filed at DE #289 (pp.10-40) and the "Joint Venture Agreement" means the joint venture provisions of and exhibit to the PSA.

The Court has considered the foregoing, the record, and the representations of counsel and the parties at the Sale Hearing. The Court has also considered the disputes on the appropriate form of this Order reflected in emails to the Court copied to all major parties in interest.

RBL submitted a proposed order on August 24th agreed to by RBL and other parties with liens against the Debtors' property, including Michael Schlessinger and Mr. Schlessinger's law firm, Kobi Karp Architecture & Interior Design, Inc., and the City of Miami, which confirmed its agreement in an August 25th email to the Court. The form of the Order submitted by RBL (the "RBL Order") was also agreed to by Jason Welt, the real estate broker retained by the Debtors and by the Office of the United States Trustee, except for a proposed change to paragraph 20 of the Order.

The major substantive objections to the form of the RBL Order were described in an email on August 25th and a redlined proposed order attached to the email, submitted by Adeena Weiss, as the corporate representative of the Debtors and on behalf of her mother, Caroline Weiss, one of the Debtors' equity holders (the "Weiss Objection"). Counsel for the Debtors, Joel Aresty, has

offered no comments on either the RBL Order or the Weiss Objection. RBL responded to the Weiss Objection in an August 26th email (the "RBL Response"). Having reviewed the RBL Order, the Weiss Objection, and the RBL Response and being otherwise fully advised, and for the reasons stated on the record of the Sale Hearing which are incorporated herein by reference as supplemented and amended in part by this Order, the Court finds and determines as follows:

**A. Findings and Conclusions.** The findings of fact and conclusions of law set forth herein and stated on the record at the Sale Hearing, as amended in part by this Order, constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent any finding of fact constitutes a conclusion of law, it is adopted as such, and to the extent any conclusion of law constitutes a finding of fact, it is so adopted.

**B. Jurisdiction, Authority, and Venue.** The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O), and the Court has authority to enter a final order in this matter. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief granted are 11 U.S.C. §§ 105(a), 363(b), 363(f), 363(m), and 363(n), and Federal Rules of Bankruptcy Procedure 2002, 6004, and 9014.

**C. Notice.** Due, adequate, and sufficient notice of the Sale Motion, the auction, the Sale Hearing, and the relief granted by this Order has been provided in accordance with 11 U.S.C. §§ 102(1) and 363, Federal Rules of Bankruptcy Procedure 2002 and 6004, and the Sale Procedures Order. All parties in interest were afforded a reasonable opportunity to object and to be heard. No other or further notice is required.

**D. Compliance with Sale Procedures.** The auction was conducted on August 17,

2026, in accordance with the Sale Procedures Order, as modified by the August 13, 2026 Order (which rescheduled the auction from August 14, 2026, to August 17, 2026). The Debtors and Ramos have complied with the Sale Procedures Order and the August 13, 2026 Order in all material respects.

**E. Fair and Open Auction; No Collusion.** The auction was conducted fairly, in good faith, and at arm's length, and its integrity was maintained. The Property was exposed to a competitive, court-approved bidding process open to all Qualified Bidders. The bids were not the product of fraud or collusion, and no bidder engaged in any conduct prohibited by 11 U.S.C. § 363(n). Each Qualified Bidder acknowledged that it had not engaged and would not engage in collusion, as required by the Sale Procedures Order.

**F. Deposits.** Ramos timely deposited $600,000 in cleared funds into the Joel M. Aresty, P.A. Attorney Trust Account (the "Debtors' Counsel's Trust Account") in compliance with the August 13, 2026 Order, and timely deposited an additional $400,000 in cleared funds for a total deposit of $1,000,000 before or following the auction as required by paragraph 2(l) of the Sale Procedures Order. Ramos has satisfied all deposit requirements. The deposits, totaling $1,000,000, are non-refundable in the event the closing does not occur. The non-refundable nature of the $1,000,000 was acknowledged by Ramos (or his agents) at the Sale Hearing.

**G. Successful Bid.** As reported in the Notice of Auction Results, the highest and best bid at the auction was that of Ramos, in the amount of $50,000,000 in cash. Ramos's bid is the highest and best offer for the Property.

**H. Business Justification.** The sale of the Property is supported by sound business justification and a valid business purpose. The Debtors have exercised reasonable business judgment in determining to sell the Property to Ramos pursuant to the Purchase and Sale

Agreement (the "PSA")[1] and Joint Venture Agreement (DE #289, pp.10-26), and the sale is in the best interests of the Debtors, their estates, and their creditors.

**I. Marketing and Process.** The Property was actively marketed for several months, and the sale process was fair, reasonable, and adequate. On December 23, 2025, the Court entered its Order Granting Debtors' Application for Authorization to Employ Real Estate Broker (DE #83), authorizing the Debtors to employ Trustee Realty Inc. and Jason A. Welt (collectively, the "Broker") as exclusive real estate broker for the sale of the Property pursuant to the Vacant Land Listing Agreement attached to the Debtor in Possession's Application for Employment of Real Estate Broker (DE #70), as modified by DE #83 (the "Listing Agreement"). The Court subsequently entered, on the motion of RBL (DE #237), its Order Granting Motion Confirm Continuation of Broker Listing Agreement Filed by Creditor RIC (Blue Lagoon) LLC (DE #244), confirming the extension and the continued retention of the Broker on the same terms and conditions previously approved through the closing of the auction sale. Among other things, the Broker marketed the Property, negotiated and conveyed offers to the Debtors, kept the Court and interested parties regularly apprised of updates in the sale process, qualified potential bidders for the auction sale, and conducted the auction held on August 17, 2026, and rendered substantial services that facilitated the sale transaction approved herein.

**J. Good-Faith Purchaser.** Ramos is a good-faith purchaser within the meaning of 11 U.S.C. § 363(m). Ramos's bid was made in good faith, for value, and without fraud, collusion, or knowledge of any adverse claim. No party objected at the Sale Hearing to a finding that the auction was conducted in good faith or that Ramos bid in good faith. Ramos is not an insider or affiliate of the Debtors, and the Joint Venture Agreement between Ramos and the Debtors was fully

[1] The Court's reference to the PSA in this Order references only the sale agreement portion of the Joint Venture and Sale Agreement, not the Joint Venture Agreement.

disclosed on the record and does not detract from Ramos's good faith. Ramos is entitled to all of the protections of 11 U.S.C. § 363(m), and the reversal or modification of this Order or any prior order concerning the sale on appeal shall not affect the validity of the sale to Ramos pursuant to the PSA, as modified by this Order, unless this Order and the sale are stayed pending appeal.

**K. No Successor Liability.** Ramos is neither a successor to nor a continuation of either or both of the Debtors. Ramos is unrelated to the Debtors, except that the PSA and the Joint Venture Agreement provide that Ramos and the Debtors are 50%/50% joint venture partners.

**L. Authority to Close.** The Debtors have full authority and are directed to execute and deliver all documents required to be delivered to the purchaser under the Sale Procedures Order and the PSA (the "Sale Documents") and to consummate the sale. Caroline Weiss has authorized the sale and has authority to execute the Sale Documents on behalf of the Debtors, and the sale has been duly and validly authorized by all necessary corporate action.

**M. Unconditional Obligation to Close.** The Court has reviewed the PSA and finds that there are no requirements, conditions, or contingencies to the obligation of the purchaser to close on the sale, and no obligations of the Debtors, as a condition to the purchaser's obligation to close, other than the entry of this Order. At the Sale Hearing, Mr. Seyed M. Moghani, who represented to the Court that he is Ramos' partner and authorized to act for and bind Ramos, affirmed on the record that the only condition to closing is the entry of this Order.[2]

**N. Assignment.** The PSA and the Joint Venture Agreement provide that Ramos and the Debtors are 50%/50% joint venture partners, and the PSA further provides that the parties may form a joint venture entity to be the purchaser of the Property. The PSA is assignable by Ramos

[2] The Court rejects the additional language in this paragraph requested in the Weiss Objection. Moreover, all other proposed revised language in the Weiss Objection, not adopted in part in this Order, or specifically referred to in this Order, have been reviewed, considered, and rejected by the Court as not appropriate or, in some instances, redundant and unnecessary.

and may be assigned to a joint venture entity formed by the Debtors and Ramos prior to closing for the purpose of acquiring the Property. Any such assignment shall not relieve Ramos of his obligations under the PSA and this Order, shall not delay the closing, and shall not affect the payments required to be made at closing under this Order, including the payment to RBL.

**O. PSA Disputes Do Not Affect Closing.** The Court approves the PSA. The closing of the sale is not conditioned on the performance of any obligation under the PSA other than entry of this Order. The Court does not retain jurisdiction to resolve disputes arising under the Joint Venture Agreement or joint venture provisions of the PSA, and no such dispute shall provide grounds to prevent or delay the closing.

**P. Free and Clear Under § 363(f).** The requirements of 11 U.S.C. § 363(f) are satisfied. The sale price exceeds the aggregate value of all asserted liens on the Property within the meaning of 11 U.S.C. § 363(f)(3), and one or more of the additional conditions of § 363(f) is satisfied as to each asserted lien, claim, interest, or encumbrance. Accordingly, the Property may be sold free and clear of all liens, claims, interests, and encumbrances, with such liens, claims, interests, and encumbrances to attach to the proceeds of the sale.

**Q. Brokers.** The PSA provides for the payment of a real estate commission of 0.75% of the purchase price ($375,000) to the Broker and 0.75% ($375,000) to a cooperating broker. At the hearing on the Sale Motion, Ramos identified Netali Bar of Investreal as the cooperating broker (the "Buyer's Broker"), and she advised the Court that she introduced Ramos to the Debtors' principal, Caroline Weiss. Payment of these commissions at closing is customary and required by the PSA. The Court has determined the entitlement of the Brokers to compensation for purposes of paragraph 9 of the Sale Procedures Order.

**R. RBL Secured Claim.** RBL holds a first-priority secured claim against the Property

(the "RBL Secured Claim"). Paragraph 2(c) of the Sale Procedures Order, an agreed order, fixes the amount of the RBL Secured Claim as of the date of the auction at not less than $23,425,000.00, subject to adjustment through the date of the closing. Under paragraph 2(d) of the Sale Procedures Order, the RBL Secured Claim shall be paid in full at the closing if RBL is not the successful bidder. As set forth in paragraph 6 of the Court's Order of January 22, 2026 (DE #175), another agreed order, and pursuant to paragraph 2(o) of the Sale Procedures Order, the RBL Secured Claim, to be paid at closing, includes post-judgment interest from the date of entry of RBL's foreclosure judgment plus RBL's post-judgment attorney's fees and costs and is fully secured. The RBL Secured Claim is the sum of the following amounts: (a) $23,425,000.00, plus (b) interest at the Florida judgment rate on RBL's judgment from the original date of the auction sale[3] (August 14, 2026), as set in the Sale Procedures Order, through the date of the closing, plus (c) the attorney's fees and costs of RBL that were not included in the $23,425,000.00 amount except, to the extent disputed, will be held in escrow at closing in Debtors' Counsel's Trust Account, as provided in paragraph 8 below. Pursuant to paragraph 2(o) of the Sale Procedures Order, RBL is required to provide a payoff statement to the successful bidder. The Court overrules the Debtors' argument in the Weiss Objection that this Order should preserve the Debtors' right to object to all of RBL's attorney's fees. In the [Agreed] Sale Procedures Order (DE #283), the Debtors acknowledged and agreed that RBL's secured claim as of the August 14 scheduled auction was $23,425,000 and that amount included attorney's fees incurred through that date. The Debtors did not preserve, and cannot now assert, a right to object to the fees included in the agreed upon RBL Secured Claim of $23,425,000. The only fees subject to objection are the Additional Fees, as more specifically described in paragraph 8 below.

[3] In the August 13, 2026 Order, the Court, with the consent of all parties, postponed the auction to August 17, 2026.

**S. Interim Compensation.** The fees and expenses awarded in the Court's Amended Order Granting Interim Fee Application of Joel M. Aresty, P.A. (DE #309) (the "Interim Award"), will be paid at closing. The Court overrules the objection of the Debtors' equity holder to the amount and payment at closing of the Interim Award.

**T. Taxes and City Claims.** Ad valorem real property taxes are prorated and otherwise treated as provided in paragraph 9 below, and the amounts asserted by the City of Miami on account of fines, penalties, and code-enforcement obligations are treated as provided in paragraph 10 below. This Order does not adjudicate the amount, validity, or priority of any such tax or City claim.

**U. Deferred Objections.** No holder of any lien, claim, interest, or encumbrance on the Property, and no other creditor, has objected to the sale, except for the limited objection of Michael J. Schlesinger, P.A. and Michael J. Schlesinger individually ("Schlesinger"), joined by Kobi Karp Architecture & Interior Design, Inc. ("Kobi Karp"), directed solely to RBL's back-up bid. By agreement of RBL, Schlesinger, and Kobi Karp, the Court defers consideration of those objections and will hear and determine them only if the sale to Ramos fails to close as provided herein.

**V. Rule 6004(h).** Cause exists to waive the fourteen-day stay under Federal Rule of Bankruptcy Procedure 6004(h) so that the sale may close on or before the Closing Deadline of September 10, 2026. No party has objected to the sale (as distinguished from the deferred back-up-bid objections), and the estates and creditors will benefit from a prompt closing.

**W. Transfer Taxes.** The sale is being made under and pursuant to the Debtors' Joint Plan of Reorganization (as amended) (the "Plan"). The Court has entered, or will enter prior to or contemporaneously with this Order, an order confirming the Plan under 11 U.S.C. § 1129, as

modified to remove the refinancing option. Because the sale and the transfer of the Property to the purchaser are made under a plan confirmed under 11 U.S.C. § 1129, the transfer is exempt from documentary stamp taxes, surtaxes, and similar stamp, transfer, recording, and mortgage taxes pursuant to 11 U.S.C. § 1146(a).

**X. The Property.** The Property that is the subject of this Order is the Debtors' real property located at 4865 NW 7 Street, Miami, Florida 33126, comprising three (3) contiguous land lots bearing Tax Folio Nos. 01-3131-010-0050, 01-3131-010-0051, and 01-3131-010-0052 and approximately 6.99 acres, together with all improvements, fixtures, easements, appurtenances, and development rights. As set forth in paragraph 2 of the Sale Procedures Order, the Property has the legal description set forth in Exhibit B to the Agreed Motion, which legal description is attached to and incorporated in this Order as **Exhibit A**.

Accordingly, for the foregoing reasons, and being otherwise fully advised, it is **ORDERED** and **ADJUDGED** that:

1. **Sale Approved.** The sale of the Property to Ramos for $50,000,000 in cash is approved. Ramos was the highest and best bidder at the auction conducted on August 17, 2026.

2. **Authorization to Sell and Consummate.** Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and directed to sell the Property to Ramos and to consummate the sale in accordance with the PSA, the Sale Procedures Order, and this Order. The Debtors and their professionals are authorized and directed to execute, deliver, and record the Sale Documents and to take all actions reasonably necessary to consummate the sale, without further order of the Court.

3. **Deposits; Balance of Purchase Price.** The two deposits made by Ramos, totaling $1,000,000 and held in the Debtors' Counsel's Trust Account, are non-refundable in the event Ramos does not timely close. The deposits shall be credited against the purchase price, and Ramos

shall pay the balance of $49,000,000 in cleared funds at closing.

**4. Closing Deadline.** The closing shall occur on or before September 10, 2026 (the "Closing Deadline"). Time is of the essence. The Closing Deadline shall not be extended except as expressly authorized by subsequent order of this Court. Failure to close by the Closing Deadline shall result in forfeiture of Ramos's deposits as liquidated damages. The Court rejects the proposed additional language in the Weiss Objection providing for additional remedies. Paragraph 15.1 of the PSA states that forfeiture of the deposit as liquidated damages under paragraph 4.2 is the Debtors' "sole and exclusive remedy at law or in equity." (DE #289, p.21).

**5. Unconditional Sale.** The obligation of the purchaser, Ramos, to consummate the sale pursuant to the PSA, as modified by this Order, is unconditional except for entry of this Order, subject only to the ministerial closing mechanics expressly required by the Sale Documents. All material conditions to the purchaser's obligation to close have been satisfied, waived, or eliminated other than entry of this Order. The sale is not subject to any contingency, including any financing, due-diligence, title-insurance, title-commitment, material-adverse-change, further-Court approval, or any plan-confirmation condition.

**6. Free and Clear; Vesting of Title.** Pursuant to 11 U.S.C. § 363(f), upon closing the Property shall be transferred to and shall vest in the purchaser free and clear of all liens, claims, interests, and encumbrances of any kind, to the maximum extent permitted by law and the Sale Documents. All such liens, claims, interests, and encumbrances not satisfied at closing shall attach to the sale proceeds with the same validity, priority, extent, and enforceability they had against the Property immediately before the closing, subject to all rights, claims, objections, defenses, and challenges that existed before the sale. Governmental and recording authorities are authorized and directed to accept for recording and to record the deeds and other instruments necessary to

effectuate the transfer of the Property to the purchaser. Notwithstanding the foregoing, ad valorem real property tax liens and the City of Miami fines, penalties, and code-enforcement claims shall be treated as provided in paragraphs 9 and 10 of this Order, respectively.

**7. No Successor Liability.** The sale to Ramos is also free and clear of any claims of derivative, vicarious, or successor liability of any kind, nature, or character whatsoever, by reason of any theory of law or equity.

**8. Payment to RBL at Closing.** (a) At the closing and in no event later than the Closing Deadline, the purchaser or closing agent shall pay RBL by wire transfer the full amount of the RBL Secured Claim, consisting of (i) $23,425,000.00, plus (ii) interest at the Florida statutory judgment rate on RBL's judgment from the original date of the auction sale (August 14, 2026) through the date of the closing, plus (iii) the attorney's fees and costs of RBL that were not included in the amount of $23,425,000.00 (the "Additional Fees"), all as set forth in a payoff statement to be furnished by RBL prior to closing (the "RBL Payoff Amount"); (b) the RBL Payoff Amount is subject only to the possible holdback of the Additional Fees or some portion thereof in the event the Debtors dispute the reasonableness of the amount of the Additional Fees, (c) in the event the Debtors dispute the amount of the Additional Fees, the existence of that dispute shall not delay the payment at closing of the balance of the RBL Payoff Amount (the total RBL Payoff Amount less the disputed amount of the Additional Fees); (d) in the event of any dispute concerning the Additional Fees, the Additional Fees or the portion of the Additional Fees that is disputed, shall not be disbursed to RBL at closing but shall instead be deposited directly into the Debtors' Counsel's Trust Account pending further order of the Court; (e) consistent with paragraph 2(d) of the Sale Procedures Order, nothing in this Order shall impair, subordinate, avoid, or otherwise adversely affect the validity, priority, extent, or enforceability of RBL's first-priority lien or the

RBL Secured Claim; (f) RBL shall deliver original releases/satisfactions of its judgment, mortgage and other security instruments upon its receipt of cleared funds for the full RBL Payoff Amount, less any portion of the Additional Fees disputed by the Debtors. If the Court announced at the August 19, 2026 hearing that RBL could withhold delivery of releases and satisfaction of its judgment pending resolution of a dispute over Additional Fees, that ruling is amended by this Order. In most section 363 sales, liens for disputed amounts do not remain liens on the property subject of the sale pending resolution of the dispute but instead become liens attaching to the proceeds. In this case, the liens will attach to the disputed portion of the Additional Fees that will be held in the Debtors' Counsel's Trust Account.

**9. Property Taxes.** Ad valorem real property taxes and assessments against the Property due for tax years 2025 or earlier, if any, shall be paid at closing from the sale proceeds. Ad valorem real property taxes and assessments for the tax year in which the closing occurs shall be prorated between the Debtors and the purchaser as of 11:59 p.m. on the day immediately preceding the closing, as provided in Section 12.2 of the PSA, and, together with ad valorem real property taxes for subsequent years, constitute Permitted Exceptions to which title to the Property is conveyed subject, as provided in Section 9.2 of the PSA.

**10. City Fines and Code-Enforcement Claims.** Fines, penalties, code-enforcement obligations, or related amounts asserted by the City of Miami shall either be paid at closing to the extent authorized or, to the extent not paid at closing, shall remain a continuing lien on the Property with the same validity, priority, extent, and enforceability that existed against the Property immediately before the closing, and title to the Property shall pass subject to any such unpaid amounts. All rights, claims, objections, defenses, and disputes of the parties are preserved, and nothing in this Order adjudicates the amount, validity, or priority of any disputed City claim.

**11. Broker Commissions.** (a) Upon the closing of the sale, the Broker is authorized and entitled to receive a real estate commission equal to 0.75% of the gross purchase price ($375,000) based upon a $50,000,000 purchase price, consistent with the terms previously approved by this Court; (b) the Buyer's Broker shall likewise receive a real estate commission equal to 0.75% of the gross purchase price ($375,000) based upon a $50,000,000 purchase price, consistent with the terms previously approved by this Court; (c) the settlement agent responsible for disbursing closing proceeds is authorized and directed to pay such commissions directly to the Broker and the Buyer's Broker from the closing proceeds at closing, without further order of this Court; and (d) the entitlement of the Broker and the Buyer's Broker to receive their commissions as set forth herein is approved and allowed, and no further application, fee motion, or order shall be required as a condition to payment of such commissions upon the closing of the sale. If the closing does not occur, neither the Broker nor the Buyer's Broker shall have any claim for payment of an administrative expense.

**12. Debtors' Counsel's Interim Compensation.** The interim compensation consisting of expenses in the amount of $5,346.88 (representing 100% of expenses incurred) and $144,120 in fees (representing 80% of fees requested), less a $15,000 retainer, for a total sum of $149,466.88, awarded in the Court's Amended Order Granting Interim Fee Application of Joel M. Aresty, P.A. (DE #309), shall be paid to Joel M. Aresty, P.A. at closing.

**13. Closing Costs.** All ordinary and necessary closing costs and prorations shall be paid at closing as provided in the PSA.

**14. Custody and Disposition of Sale Proceeds.** All sale proceeds not required to be paid at closing pursuant to the foregoing provisions of this Order shall be paid directly into the Debtors' Counsel's Trust Account (the trust account of Joel M. Aresty, P.A.) and shall remain in said trust

account pending further order of this Court regarding distribution. The sale proceeds deposited in the Debtors' Counsel's Trust Account are preserved and remain subject to the jurisdiction of this Court, and the deposit of proceeds into that account does not constitute a distribution to the Debtors or to any creditor. No party may withdraw, transfer, distribute, encumber, or otherwise dispose of such proceeds absent further order of this Court, with the exception of payment of United States Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930 ("U.S. Trustee Fees") which fees shall be paid without further order of Court when due and with sufficient amounts reserved for future U.S. Trustee Fees that may arise while the case remains open. All valid liens, claims, interests, and encumbrances that were not satisfied at closing (other than the ad valorem real property tax liens and the City of Miami claims addressed in paragraphs 9 and 10, which are treated as provided in those paragraphs) shall attach to such proceeds with the same validity, priority, extent, and enforceability they had against the Property immediately before the closing, subject to all rights, claims, objections, defenses, and challenges that existed before the closing. A separate escrow or trust account (separate from Debtors' Counsel's Trust Account) shall not be required with respect to any disputed claim.

**15. Reporting.** The Debtors shall report the sale in their Monthly Operating Report or Quarterly Post Confirmation Reports and shall include all receipts and disbursements made at the closing by or on behalf of the Debtors. The Debtors remain responsible for the payment of all applicable United States Trustee quarterly fees.

**16. Notice of Closing or Default.** Debtors' counsel shall file a Notice of Closing within one business day after the closing, or, if the closing does not occur on or before the Closing Deadline, a Notice of Default attesting that the closing did not occur and requesting a further hearing.

**17. Governmental Units.** This Order is binding upon and enforceable against all

governmental units to the maximum extent permitted by law. Each governmental and recording authority is authorized and directed to accept and record any instrument necessary to effectuate the transfer of the Property free and clear as provided in this Order.

**18. Transfer Taxes.** The Court has entered, or will enter prior to or contemporaneously with this Order, an order confirming the Plan under 11 U.S.C. § 1129. Because the sale and the transfer of the Property are made under a plan confirmed under 11 U.S.C. § 1129, the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the sale shall be exempt from documentary stamp taxes, surtaxes, transfer taxes, recording taxes, mortgage taxes, and similar taxes pursuant to 11 U.S.C. § 1146(a), and each recording officer and governmental unit is directed to accept for recording, and to record, any such instrument without the payment of any such tax.

**19. Section 363(m).** Pursuant to 11 U.S.C. § 363(m), the reversal or modification on appeal of the authorization of the sale in this Order shall not affect the validity of the sale to Ramos, as a good-faith purchaser, unless this Order and the sale are stayed pending appeal.

**20. Back-Up Bid and Other Relief.** In the event the sale to Ramos does not close on or before the Closing Deadline, upon the filing of a Notice of Default by the Debtors or a motion by RBL, the Court will schedule a hearing to consider the deferred objections to RBL's back-up bid and whether to approve a sale to RBL as the back-up bidder or grant other relief and at that scheduled hearing, without further notice and the Court may enter an order establishing procedures for the resolution of those objections and any further proceedings, if necessary.[4]

**21. Retention of Jurisdiction.** The Court retains jurisdiction to interpret, implement, and enforce this Order, the PSA, as modified by this Order, the Sale Procedures Order, and the Sale

[4] The Court is adopting the revisions proposed by the Office of the United States Trustee.

Documents; to compel payment of the purchase price and the payments required by this Order; to compel the Debtors and their representatives to execute and deliver the Sale Documents; to confirm the transfer of title to the purchaser; to resolve any dispute arising in connection with the closing or the disposition of the sale proceeds; and, in the event of non-compliance by the Debtors or their representatives, to direct the appointment of a Chapter 11 trustee to consummate the sale. Notwithstanding the foregoing, the Court acknowledges that the Debtors entered into a Joint Venture Agreement in conjunction with the PSA but the Court does not retain, and expressly declines to reserve, jurisdiction to adjudicate any dispute arising under the Joint Venture Agreement (including the joint venture provisions of the PSA), and no such dispute shall prevent, delay, or condition the closing.

**22. Effectiveness; Rule 6004(h).** This Order shall be effective and enforceable immediately upon entry, and the fourteen-day stay under Federal Rule of Bankruptcy Procedure 6004(h) is waived.

**23. Continuing Effect.** All provisions of the Sale Procedures Order remain in full force and effect except as expressly modified by this Order. This Order shall be binding upon the Debtors, the purchaser, their agents, all creditors and parties in interest, and their respective successors and assigns, including any trustee subsequently appointed in these cases.

###

Attorney Joel Aresty is directed to serve a conformed copy of this Order on all interested parties and to file a Certificate of Service.

**EXHIBIT A**
**LEGAL DESCRIPTION**

The real property located at 4865 NW 7 Street, Miami, Florida 33126, consisting of three (3) land lots bearing Tax Folio Nos. 01-3131-010-0050, 01-3131-010-0051, and 01-3131-010-0052, more particularly described as follows:

**PARCEL 1:**

THAT PART OF TRACT NO. 2, OF PLAT OF THAT PORTION OF THE SOUTHEAST 1/4 OF SECTION 31, TOWNSHIP 53 SOUTH, RANGE 41 EAST, LYING SOUTH AND SOUTHEAST OF TAMIAMI CANAL, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, AT PAGE 10, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA; LYING AND BEING IN THE CITY OF MIAMI, MIAMI-DADE COUNTY, FLORIDA. COMMENCE AT THE CONCRETE MONUMENT SET IN THE PAVEMENT OF NORTHWEST 7TH STREET AT THE SOUTHEAST CORNER OF SAID SECTION 31; THENCE RUN NORTH 01 DEGREES 38' 30" EAST ALONG THE EAST LINE OF SAID SECTION 31, THE SAME LINE BEING THE EAST LINE OF SAID TRACT NO. 2 AND ALSO THE ZONED CENTERLINE OF NORTHWEST 47TH AVENUE, FOR A DISTANCE OF 40.02 FEET; THENCE WEST ALONG A LINE BEING 40 FEET NORTH OF AND PARALLEL WITH THE SOUTH LINE OF SAID SECTION 31, FOR 1114.00 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREINAFTER DESCRIBED; THENCE CONTINUE WEST ALONG THE LAST DESCRIBED LINE, FOR 130.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST PARALLEL WITH THE EAST LINE OF SAID SECTION 31, FOR 145.10 FEET; THENCE WEST FOR 160.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST, FOR 100.00 FEET; THENCE WEST FOR 29.40 FEET; THENCE NORTH FOR 668.33 FEET; THENCE NORTH 41 DEGREES 50' 55" EAST, FOR 21.94 FEET TO A POINT CURVE; THENCE NORTHEASTERLY-SOUTHERLY ALONG THE ARC OF SAID CURVE TO THE RIGHT, BEING CONCAVE TO THE SOUTHWEST AND HAVING A RADIUS OF 50.00 FEET AND A CENTRAL ANGLE OF 141 DEGREES 39' 05", FOR AN ARC DISTANCE OF 123.61 FEET; THENCE SOUTH 03 DEGREES 30' 00" WEST, FOR 386.21 FEET TO A POINT OF CURVE; THENCE SOUTHEASTERLY-NORTHEASTERLY ALONG THE ARC OF SAID CURVE TO THE LEFT, BEING CONCAVE TO THE NORTHEAST AND HAVING A RADIUS OF 45.00 FEET AND A CENTRAL ANGLE OF 160 DEGREES 16' 10", FOR AN ARC DISTANCE OF 125.87 FEET; THENCE SOUTH FOR 242.27 FEET; THENCE EAST FOR 154.92 FEET; THENCE SOUTH 01 DEGREES 38' 30" WEST, FOR 245.10 FEET TO THE POINT OF BEGINNING.

**PARCEL 2:**

THAT PART OF TRACT NO. 2, OF PLAT OF THAT PORTION OF THE SOUTHEAST 1/4 OF SECTION 31, TOWNSHIP 53 SOUTH, RANGE 41 EAST, LYING SOUTH AND SOUTHEAST TAMIAMI CANAL, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, AT PAGE 10, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA; LYING AND BEING IN THE CITY OF MIAMI, MIAMI-DADE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCE AT THE CONCRETE MONUMENT SET IN THE PAVEMENT OF NORTHWEST 7TH STREET AT THE SOUTHEAST CORNER OF SAID SECTION 31; THENCE WEST ALONG THE SOUTH LINE OF SAID SECTION 31, FOR 1114.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST PARALLEL WITH THE EAST LINE OF SAID SECTION 31, FOR 285.12 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREINAFTER DESCRIBED; THENCE WEST PARALLEL WITH THE SOUTH LINE OF SAID SECTION 31, FOR 154.92 FEET; THENCE NORTH FOR 242.27 FEET TO THE INTERSECTION WITH THE ARC OF A CIRCULAR CURVE, SAID POINT BEARS SOUTH 66 DEGREES 46' 10" EAST FROM THE CENTER OF THE FOLLOWING DESCRIBED CURVE; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE, BEING CONCAVE TO THE NORTHWEST, HAVING A RADIUS OF 45 FEET AND A CENTRAL ANGLE OF 14 DEGREES 43' 50", FOR AN ARC DISTANCE OF 11.57 FEET TO A POINT OF REVERSE CURVE; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE SOUTHEAST, HAVING A RADIUS OF 190 FEET AND A CENTRAL ANGLE OF 68 DEGREES 07' 27", FOR AN ARC DISTANCE OF 225.93 FEET TO A POINT OF COMPOUND CURVE; THENCE EASTERLY-SOUTHERLY ALONG THE ARC OF SAID CURVE, BEING CONCAVE TO THE SOUTHWEST, HAVING A RADIUS OF 50 FEET AND A CENTRAL ANGLE OF 98 DEGREES 57' 11", FOR AN ARC DISTANCE OF 86.35 FEET TO A POINT OF TANGENCY; THENCE SOUTH 04 DEGREES 32' 49" EAST, FOR 156.19 FEET TO A POINT OF CURVE OF CIRCULAR CURVE TO THE LEFT; THENCE SOUTHERLY-EASTERLY ALONG THE ARC OF SAID CURVE, BEING CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 45 FEET AND A CENTRAL ANGLE OF 73 DEGREES 27' 08", FOR A DISTANCE OF 57.69 FEET TO A POINT OF TANGENCY; THENCE SOUTH 77 DEGREES 59' 57" EAST, FOR 65.17 FEET TO A POINT OF CURVE OF A CIRCULAR CURVE TO THE LEFT; THENCE EASTERLY-NORTHEASTERLY ALONG THE ARC OF SAID CURVE, BEING CONCAVE TO THE NORTH, HAVING A RADIUS OF 35 FEET AND A CENTRAL ANGLE OF 52 DEGREES 44' 30", FOR A DISTANCE OF 32.22 FEET; THENCE SOUTH 40 DEGREES 44' 27" EAST ALONG A LINE RADIAL TO THE LAST DESCRIBED CURVE, FOR 31.22 FEET; THENCE EAST FOR 170.58 FEET; THENCE SOUTH FOR 142.17 FEET; THENCE WEST FOR 385.83 FEET TO THE POINT OF BEGINNING.

**PARCEL 3:**

THAT PART OF TRACT NO. 2, OF PLAT OF THAT PORTION OF THE SOUTHEAST 1/4 OF SECTION 31, TOWNSHIP 53 SOUTH, RANGE 41 EAST, LYING SOUTH AND SOUTHEAST TAMIAMI CANAL, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, AT PAGE 10, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA; LYING AND BEING IN THE CITY OF MIAMI, MIAMI-DADE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCE AT THE CONCRETE MONUMENT SET AT THE PAVEMENT OF NORTHWEST 7TH STREET, SAID MONUMENT BEING ALSO THE SOUTHEAST CORNER OF SAID SECTION 31; THENCE WEST ALONG THE SOUTH LINE OF SAID SECTION 31, FOR 1114.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST PARALLEL WITH THE EAST LINE OF SAID SECTION 31, FOR 40.02 FEET; THENCE WEST ALONG A LINE 40.00 FEET NORTH OF AND PARALLEL WITH THE SOUTH LINE OF SAID SECTION 31, FOR 130.01 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST, FOR 145.10 FEET; THENCE WEST FOR 160.00 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST, FOR 100.00 FEET; THENCE WEST FOR 29.40 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE ALONG THE LAST DESCRIBED COURSE FOR 77.23 FEET; THENCE NORTH 01 DEGREES 38' 30" EAST, FOR 601.61 FEET TO A POINT ON A CIRCULAR CURVE, SAID POINT BEARS SOUTH 47 DEGREES 55' 12" WEST FROM THE CENTER OF THE FOLLOWING DESCRIBED CURVE; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CIRCULAR CURVE TO THE LEFT, BEING CONCAVE TO THE NORTHWEST, HAVING A RADIUS OF 1395.08 FEET AND A CENTRAL ANGLE OF 00 DEGREES 13' 54", FOR AN ARC DISTANCE OF 5.64 FEET TO A POINT OF TANGENCY; THENCE NORTH 41 DEGREES 50' 55" EAST, FOR 84.27 FEET; THENCE SOUTH FOR 668.33 FEET TO THE POINT OF BEGINNING.